## SID UNDERWOOD v. STATE.

No. A-5579.   Opinion Filed Dec. 18, 1926.
(251 Pac. 507.)

22

Sigler & Jackson, for plaintiff in error.

George F. Short, Atty. Gen., and V. P. Crow, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case, filed in the district court of Carter county, March 26, 1924, charged that in said county, on or about the 22d day of January, 1924, the defendant, Sid Underwood, did buy and receive from one Eugene Durie one Ford roadster, knowing the same to have been stolen. On March 24, 1925, the trial was had, and the defendant was found "guilty of receiving stolen property as charged in the information," and his punishment fixed at confinement in the county jail for six months, and a fine of $250.

From the judgment rendered in pursuance of the verdict, he appeals, and assigns as error that the verdict is not sustained by sufficient evidence; the refusal of the court to give certain requested instruc-

tions, and the giving of others excepted to; and alleged improper remarks of the county attorney.

It is disclosed by the evidence that a Ford roadster was stolen from in front of the Broadway Baptist Church in Ardmore, Sunday night, January 20, 1924. Jack Hayes, the owner, testified that he had used it three weeks; that the car was recovered three weeks later in Sapulpa; that its reasonable value was $425.

Eugene Durie testified that he bought this car from Bernie Rogers, paying him $25 for it; that after receiving the same, the motor numbers of the car were changed by "Candy" Renfro, and Renfro sold the car for him to defendant at Emmet Key's house in Ardmore on the night of January 22, 1924; that defendant gave Renfro a diamond ring and $50 for the car; that the value of the ring was set at $100; that he was present when the car was delivered to defendant, and heard Candy Renfro tell appellant that it was a wet car.

Carl Holden, deputy sheriff, testified that he obtained information from Eugene Druie that the car was located in Sapulpa at the Frisco depot.

Dwight Bell, deputy sheriff, testified that he arrested defendant, and in a conversation with him defendant stated that one of the Key boys at his drug store said some boys had a car he could buy, and the next night he was out at Key's house they brought the car there, and he bought it for $250, and some one else was present; that later he said there was a diamond ring in the deal, and he paid the balance in cash; that these boys were to deliver the car at Tulsa; that he went on the train to Davis; and there the next day met the boys with the car, and rode with them from Davis to Norman, or Purcell, and there left them;

that he gave one of them $10 to take the car on to Tulsa and deliver it to the company defendant was working for.

For the defense Emmet Key testified that defendant was at the Key drug store, and that Candy Renfro was there and had the car with him; that they discussed the trade, and defendant bought the car at the time; that defendant left Ardmore on the midnight train that evening; that witness' wife is a niece of defendant, and defendant was stopping at witness' house at the time; that Eugene Durie was present when defendant bought the car.

As a witness in his own behalf defendant testified that he was traveling for the Motor Tools Company; that he was in Ardmore, and told some boys that he wanted to buy a car because the company did not furnish one; that Candy Renfro heard his statement, and told him that he would like to talk with him about a car; that later he came back to Ardmore, and saw Renfro and the car which was stolen, and Renfro told him it was for sale; that this occurred in front of Emmet Key's drug store; that Eugene Durie and another boy were present, and he talked to them about buying the car, and they asked him $400 for it; that the next evening he met the same boys again at the Key drug store, and offered them $50 cash and a diamond ring that he had for the car, and agreed to give them $150 more when the car was delivered to him in Tulsa; that he gave the ring and the $50 to Renfro; that, after he purchased the car, he left on the midnight train for Davis, and there the next morning he saw these boys with the car, and rode with them in the car from Davis to Pauls Valley, there he stopped, and the boys went on with the car; that he never did see the car again; that Renfro said the car belonged

to the other boys, and that he was getting $25 for selling it; that he had known Renfro some time, but did not know anything against him, but had heard that his reputation was bad.

On cross-examination he testified that the boy employed to take the car to Tulsa was called Joe Marland; that, while with him on the road, the boy asked him for ten dollars, which he gave him.

Two witnesses testified that they knew defendant's reputation as an honest, law-abiding citizen, and that reputation was good.

At the close of the evidence there was a motion for a directed verdict of acquittal which was overruled.

Counsel in their brief say:

"We take the position that the testimony shows that the witness Eugene Durie was an accomplice, and that there was no testimony which in any way corroborates him. The main issue in this case was whether or not the defendant knew that the car was stolen, and there was no testimony to corroborate Durie's statement, and no facts and circumstances to indicate that it was true; therefore we say the court erred in overruling the motion for an instructed verdict."

The court instructed the jury that the witness Durie was an accomplice of the defendant, and submitted the question of the sufficiency of the corroborating evidence to the jury under proper instructions, and we think there was ample evidence to justify the submission thereof. Whether there was any corroborating evidence was a question of law for the court, but the sufficiency thereof was a question of fact for the jury.

It is true that the evidence tending to corroborate the testimony of the witness Durie to the effect that

defendant knew when he bought the car it was stolen property is circumstantial, but it may be said generally that matters of knowledge, intent, and mental attitude are not generally capable of proof by direct and positive evidence, but must be proven by facts and circumstances. Pringle v. State, 32 Okla. Cr. 166, 239 P. 948.

The rule repeatedly announced by this court is that it has no power to reverse a judgment of conviction upon the ground that the verdict is not supported by the evidence, unless there is no substantial evidence tending to show the guilt of the defendant, or the evidence fails so far to support the verdict that the necessary inference is that the jury must have acted from partiality, passion or prejudice.

The law prescribes no standard for the strength of the corroborating evidence, and there is a failure to corroborate only if there be no evidence legitimately having that effect. We think that the evidence fails to show the witness Durie to be an accomplice, and the instruction of the court that he was an accomplice was an error in favor of the defendant. Taken as a whole, the instructions were more favorable to the defendant than he had any right to expect.

As to the alleged improper remarks of counsel for the state, we deem it sufficient to say that a careful reading of the argument satisfies us that the remarks objected to were clearly within the bounds of legitimate argument.

That the verdict was favorable to the defendant in the punishment imposed clearly indicates that it was not the result of passion or prejudice.

No other reason for reversing the judgment being

urged, and no substantial error appearing in the record, the judgment is affirmed.

BESSEY, P. J., and EDWARDS, J., concur.