## HOWARD ARTHUR WHEELER v. STATE.

No. A-8605.   Jan. 5, 1934.
(28 Pac. [2d] 592.)

R. F. Shutler, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter referred to as the defendant, was convicted of murder and sentenced to imprisonment for life in the state penitentiary, and appeals.

The testimony on behalf of the state is in substance as follows: The deceased, Myrtle Wheeler, and the defendant had been married for several years and were the

parents of two children. At the time of the alleged killing, defendant, together with his family, was living on a farm about twenty-five miles northeast of Kingfisher, in Kingfisher county. A few days prior to the alleged killing, the streams had overflowed, and the home of the defendant was almost entirely submerged, necessitating the removal of his household goods and stock from the low lands to a place of safety on higher ground.

As shown by the testimony, the defendant moved a small house that had been used around an oil well on to his place for the purpose of providing a place where he and his family could sleep until their house had been dried and cleaned out from the effects of the overflow waters. This small shack, or dog house as it is commonly spoken of in the record, was a wooden structure about 12 by 14 feet, constructed of lumber, with a slanting roof. On the night of September 2, 1932, about 10:30 o'clock, some one who was living with a family by the name of Story, whose home was approximately a half mile from the defendants, woke up and noticed a very bright light showing through the south window. Upon investigation, they discovered there was a fire on the premises of the defendant. They got up immediately and got in their car and drove down near the Wheeler home. When they got there, they discovered that the small house was enveloped in flames. At that time the fire had not reached the residence of the defendant, which was a two-room house formerly occupied by defendant and his family. They discovered the Wheeler automobile on the east side of the house, and ran it far enough away to keep the fire from reaching it. One of the parties opened the door of the old residence part to see if any of the family were in there, and found there was no one in the building. About 20 minutes after they ar-

rived at the Wheeler home the defendant came up from a westerly direction. He inquired if any one had seen his wife and children, and, upon being informed they had not, he said, "Well, they must be in there," indicating the burning building, "They were there when I left." It was impossible to put the fire out for the reason they had no fire apparatus or any means of using water to extinguish the flames.

The testimony further shows that, as soon as the fire had burned down so the parties could get up to it, they began to investigate; they threw water upon the burning debris and discovered the dead bodies of Myrtle Wheeler and her two children; Myrtle Wheeler was lying on her face badly burned, the infant child was lying next to its mother, on the springs of an iron bedstead. On the floor near the bedstead the third body was discovered; an inquest was held, and upon an investigation it was discovered there was a wound in the back of the skull of each of the three bodies. Dr. A. O. Meredith said he examined the skull of the woman, and it had a hole in it just back of the ear that was nearly large enough to put his fist in, and that the brain was protruding:

"I cleaned that all away and got down to the bone to examine the condition of the fracture there; the opening in this wound was caused by some external force, what that force was I do not know."

Dr. Meredith further explained more minutely the size of the hole in the skull and the effects of the burn upon it.

The defendant did not take the stand in his own behalf, but called a number of witnesses to show that he had been over to his brother's that evening to get a colt; that he was not at home when the fire started. Several wit-

nesses testified to the defendant and his wife living peaceable and happy together; that they had been there often, and no one seemed to know of their having any family trouble. The state offered some testimony to show that about two years prior to this alleged offense defendant had stated that he did not know why he married his wife unless it was to spite her mother.

It would serve no useful purpose to set out the testimony in full, as all the testimony relating to the crime is circumstantial. The defendant and his family were together about 6 o'clock in the evening. There was no disturbance or trouble with the family so far as those who were at the home at the time heard or could see. The house was discovered on fire. The defendant was not at home when the parties got there. Later he came up on horseback and got down and asked about his wife and children, and, when he failed to find them, he went to the cars near the house and said they must be in there. Afterwards he went back and picked up a hammer and threw it against the burning building, and said it might as well burn too.

The undisputed testimony is that the deceased Myrtle Wheeler had been struck with some instrument in the head, breaking the skull. An effort was made by the defense to show that there were some heavy timbers in the building and that one might have struck her and inflicted the wound which was on her head.

The defendant has assigned six errors alleged to have been committed by the trial court, but the only error argued by him is that the verdict of the jury and the judgment of the court is contrary to the evidence, and is not supported by sufficient evidence. No complaint is made

of the instructions of the court, nor is there any argument presented as to the admission or rejection of evidence, so the only question for this court to consider is the question, Is the evidence sufficient to sustain the conviction?

No punishment is too severe to be inflicted upon any one who commits as grave a crime as shown by the record in this case has been committed. Two innocent children and a mother murdered and then burned. The evidence is wholly circumstantial, yet all the facts and circumstances point to the guilt of defendant. The court, when it submitted the case to the jury, advised the jury fully and correctly as to the law applicable to the facts in this case. The question then is, Is there any competent evidence to sustain the conviction? In Underwood v. State, 36 Okla. Cr. 21, 251 Pac. 507, 509, this court said: "The rule repeatedly announced by this court is that it has no power to reverse a judgment of conviction upon the ground that the verdict is not supported by the evidence, unless there is no substantial evidence tending to show the guilt of the defendant, or the evidence fails so far to support the verdict that the necessary inference is that the jury must have acted from partiality, passion, or prejudice."

Before this court will reverse a conviction upon the ground that the verdict of the jury is contrary to the evidence, it must find there is no testimony in the record from which the jury could rationally conclude that the defendant was guilty unless it appears from the record that the jury was influenced by improper motives in arriving at its verdict. Ostendorf v. State, 8 Okla. Cr. 362, 128 Pac. 143; Bishop v. State, 9 Okla. Cr. 175, 130 Pac. 1173; Choate v. State, 37 Okla. Cr. 314, 258 Pac. 360; Mayse v. State, 38 Okla. Cr. 144, 259 Pac. 277.

222

There is nothing in the record to show that the jury was influenced by improper motives in arriving at its verdict. Under the law of this state, the jury is the exclusive judge of the facts, and, where there is any competent evidence to sustain the verdict returned by it, this court will not substitute its judgment for the judgment of the jury. The evidence is sufficient to sustain the judgment.

The defendant was accorded a fair and impartial trial. The court correctly advised the jury as to the law applicable to the facts in the case. There are no errors in the record sufficient to warrant a reversal. The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.