GLEN HUFFORD v. STATE.

No. A-9128.　March 26, 1937.
(66 Pac. [2d] 529.)

John Beveridge, John W. Tillman, and Fred A. Tillman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sim T. Carman, Co. Atty., and L. L. McKenzie, Asst. Co. Atty., for the State.

BAREFOOT, J. The defendant was charged by information in Osage county with the crime of burglary in the second degree, was convicted, and appeals to this court.

He was informed against jointly with one Aaron Wise, who was used as a witness by the state. The first assignment of error is that the testimony of Aaron Wise, he being an accomplice, is not properly corroborated. They were charged with burglarizing the home of T. E. Tedlock, a school teacher, on July 8, 1935, and with breaking the lock and entering the home and taking a Majestic radio.

The evidence showed that Mr. Tedlock's residence was at the teacherage of a country school, about 2½ miles west of the town of Skiatook, in Osage county; that he was away from home on a vacation; before leaving home he had made arrangements with one Lee Kilpatrick, to sleep at his residence and look after his property while he was away; that Mr. Kilpatrick slept there on the night of the 7th of July, and left early the next morning, July 8th, locking the door before he left; that when he returned in the evening he found the house had been broken into by breaking the lock, and a Majestic radio, weighing about 175 pounds, was missing.

The witness, Aaron Wise, testified that he went to the home of the defendant, who was a cousin of his, to visit on Saturday, July 6th; that defendant's home was very close to the Tedlock home; that on Sunday morning he had a talk with the defendant about a radio; that the

defendant told him that he knew where there was one that would be easy to get; that it was at the home of Mr. Tedlock, who was away on a vacation, and that the man who stayed there at night left early every morning, and that it would be a cinch to get it after he left; that he did not know Mr. Tedlock, and did not know where he lived, or that he had a radio; that on Monday morning, July 8th, he and the defendant walked up in sight of the Tedlock home and saw Mr. Kilpatrick leave the house; that the defendant ran down the road to be sure it was him; and that he watched to see if any one else was around the house; that they then got the car of the defendant and came back to the Tedlock home; and that he got out of the car and went to the house and broke the lock and got the radio to the door; that the defendant drove around and watched, and then came to the house and that both he and the defendant carried the radio from the house to the stable where they rested, and then carried it on out to the car that had been parked by the defendant in the road; both witness and defendant carried the radio in the car to Tulsa, and placed it in the home of one Leslie Crawley, a friend of Wise; the next day both he and the defendant met a friend of defendant's named Bill Dickens, at the Pastime pool hall in Tulsa, and defendant made arrangements with Dickens to bring the radio to his house, and that he could have all over $40 he could get for it; that he, Wise, went back to Crawley's house and got the radio while the defendant waited for him on a street in Tulsa; and when he got the radio he went to where the defendant was waiting, picked him up, and they carried the radio and left it at the home of Bill Dickens as agreed; that the officers the next day, after witness and defendant had been arrested and placed in jail at Skiatook, found the radio at Dickens' home; that

just after they were placed in jail he and defendant had a talk and defendant told him that if they found the radio that they were hooked and if they did get caught he wanted him, Wise, "to take the rap," and he told him that he would. This conversation was heard by Officer Bunk Elliott, who had stationed himself by the side of the cell just after placing them in jail at Skiatook. The next day witness gave a written statement to the county attorney, the same being the day of the preliminary.

The defendant, in this statement, gave about the same story that he told at the trial, with the exception that in the statement he said that the defendant did not go with him to Mr. Tedlock's house to get the radio, and was not present at the time he broke into the house and got it; that after he secured the radio he took it down the road and hid it and then went back to the house of defendant and told him he had ditched it; that he and the defendant agreed to make up an alibi with reference to having the valves on defendant's car ground so that the car would be torn down and they could show this as an alibi. In this statement witness states that the defendant went with him to Tulsa and to all the details heretofore stated. Afterwards the witness talked to the county attorney and told him that he did not want to commit perjury, and when confronted with the fact that by reason of the weight of the radio it would have been impossible for him to carry the same by himself, he decided to tell the truth and made a written statement to the county attorney in which he related practically the same story he told from the witness stand in this case. This was only a few days after the burglary and arrest of defendant and witness.

From the above statement, it will be seen that the witness, Aaron Wise, was corroborated in many details.

The fact that the house was robbed and that the radio was gone. The evidence of the city marshal of Skiatook that he listened to a conversation between the witness and defendant just after they were placed in jail in which the defendant said that he wanted witness to take the rap if they were caught and that he could be more help to him on the outside than he could on the inside; the testimony of the witness Leslie Crawley that both defendant and Wise came to his house and left the radio. The evidence of the witness Bill Dickens that the defendant made arrangements with him to keep the radio at his home and that he could have all over $40 that he could get for it. The defendant, as a witness in his own behalf, corroborated the evidence of the witness Wise in many details, except that he denied that he was present at the time of the breaking and taking of the radio. He claims that he loaned his car to Wise and that he committed the burglary alone while defendant was on the streets of Skiatook. That the witness was gone about 35 or 40 minutes and returned, and that he and Wise went to Tulsa together in defendant's car. They returned to defendant's home that night and returned to Tulsa next day. He admitted that Wise told him he had the radio in the car soon after they left Skiatook and knowing this, he helped take it to Dickens' residence for the reason that he said he was afraid that some one would get in trouble. He said, "He wanted to have it somewhere so somebody would not get suspicious and he did not think Bill would because he had known me all his life." This was two days after the house had been burglarized and the radio taken.

From the above statement, it is readily seen that there was sufficient corroboration of the witness Wise. The law prescribes no standard for the strength of the corroborating evidence and there is a failure to corroborate only

if there be no evidence legitimately having that effect. Where the corpus delicti is well proved, and there is competent evidence independent of that of the accomplice showing the actual commission of the crime, it tends to connect the defendant with the commission thereof; the sufficiency of such corroboration is a question of fact for the jury. It is not necessary under the law that the corroborating evidence connect the defendant with the offense; if it tends to do so, it is sufficient; it may be proved by circumstantial evidence, it need not be by direct evidence.

The courts of this state have passed upon this proposition many times. The case of Moody v. State, 13 Okla. Cr. 327, 164 Pac. 676, seems to be one of the leading cases from this court. In that case it is said:

"Evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime; it is sufficient if it tends to connect him with its commission.

"Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime need not be direct, but may be circumstantial only.

"It is not essential that the corroborating evidence shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to some material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or the circumstances thereof."

See, also, Bond v. State, 54 Okla. Cr. 39, 14 Pac. (2d) 425; Underwood v. State, 36 Okla. Cr. 21, 251 Pac. 507; McCurdy v. State, 39 Okla. Cr. 310, 264 Pac. 925; Patter-

son v. State, 42 Okla. Cr. 255, 275 Pac. 387; Bradley v. State, 43 Okla. Cr. 456, 279 Pac. 920; Morton v. State, 46 Okla. Cr. 361, 287 Pac. 1087.

It will thus be seen that the testimony of the accomplice Wise was sufficiently corroborated in this case.

Defendant complains of the giving of instruction No. 7, which is in reference to an accomplice. We have carefully examined this instruction and it is in harmony with the law as announced by this court in many cases. It informs the jury that no person may be convicted upon the testimony of an accomplice unless there is other evidence in the case tending to connect the defendant with the commission of the offense, and that such other evidence is insufficient if it merely shows the commission of the crime or the circumstances thereof, but such other evidence to be sufficient to corroborate an accomplice must tend to connect the defendant with the commission of the crime charged against him. Instructions similar to this have been approved by this court in many cases. Hendrix v. State, 22 Okla. Cr. 230, 210 Pac. 734; Wishard v. State, 5 Okla. Cr. 610, 611, 115 Pac. 796; Adams v. State, 21 Okla. Cr. 448, 209 Pac. 189.

Defendant in his brief in quoting instruction No. 7 uses the word "sufficient" where the case-made in quoting this instruction uses the word "insufficient." This no doubt is a typographical error; however, it makes a vast difference in the reading of this instruction, for the reason that as quoted in the brief of defendant it has the court as charging the jury that the evidence of corroboration is "sufficient" if it merely shows the commission of the crime or the circumstances thereof. This, of course, would be contrary to the statute of this state, but by the use of the word "insufficient" the court charges the jury

that the corroboration is insufficient if it merely shows the commission of the crime or the circumstances thereof, but must go further and tend to connect the defendant with the commission of the crime charged against him.

From an examination of the record, it appears that the defendant received a fair and impartial trial. The defendant presented his defense and the jury passed upon it and found him guilty. It is our opinion that the judgment of the district court of Osage county should be affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.