JAMES L. HADDOCK v. STATE.

No. A—9366. June 24, 1938.
(81 P. 2d 339.)

354

 

Grigsby & Andrews, of Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and W. V. Stanfield, Co. Atty., of Ada, for the State.

BAREFOOT, J. The defendant was charged by information in Pontotoc county with the crime of murder, was convicted of manslaughter in the first degree, and sentenced to 20 years in the penitentiary, and has appealed.

The defendant was charged with driving a 1935 Ford coupe automobile on the 21st day of November, 1936, while under the influence of intoxicating liquor, and in a reckless and careless manner, and that by reason thereof did strike one M. B. Maner, and that by reason of the injuries received, killed him, the said M. B. Maner.

The first proposition presented by the defendant is that the court erred in overruling his demurrer to the evidence, in refusing to direct a verdict in his favor, and that the verdict of the jury is contrary to the law, and against the weight of the evidence. In other words it is contended that the evidence is insufficient to sustain the verdict.

The record reveals that defendant was charged with murder in connection with the killing of M. B. Maner, on Highway No. 19, about two miles west of Ada, Pontotoc

county, on the night of November 21, 1936. Deceased and his family were coming east on said highway in a Model A Ford roadster. They stopped near the Sandy bridge west of Ada to fix a flat tire, on the right front wheel. They drove to the right side of the road and stopped the car about two or three feet from the bar pit south of the highway, and 27 feet from the north side of the car to the north edge of said highway. This was the exact measurement taken by the officers, as the car was not touched in the accident and was in the same position. The right wheel had been jacked up and rocks had been placed under it. The wife of defendant and two small children had gotten out of the car and were sitting by the side of the highway at the time of the killing. A small boy, ten years of age, and a brother of deceased's wife had assisted him in fixing the flat tire by holding a flashlight. After fixing the tire, deceased and the boy were in the act of tightening the lugs on the left front wheel when an automobile, approaching at a high rate of speed from the east on said highway, struck deceased and the boy, carrying the boy 75 feet, and the deceased 150 feet down said highway and so injuring deceased that he died on November 24, 1936.

The proof on behalf of the state, and by the wife of deceased, was that she saw the car coming at a high rate of speed; that it was on the left or wrong side of the road; that the car hit her husband and dragged him about 150 feet west of the parked car, and her little brother about 75 feet from said car; that the automobile did not stop but went on west and the driver did not come back. She thought the car was a one-seated car and was a Ford V-8; that the lights on both cars were burning. She identified certain clothes consisting of the blue overalls and shirt worn by the deceased which were introduced in evidence. She testified that the killing occurred between 7:30 and 8 o'clock at night.

The sheriff of Pontotoc county, Clyde Kaiser, and one of his deputies, Charley Shockley, were called to the scene of

the accident around 7:30 p. m. They saw the lights of the cars which were parked near where the accident had occurred, and when they arrived they found the car jacked up with rocks under it. It had been untouched and was in two or three feet of the bar ditch on the south side of the road. They measured the distance from the north side of the car to the north side of the road and it was nine steps or 27 feet. They found pieces of glass on the south side of the road, and about 150 feet west they found other glass, a pocket knife, a button and a mill. They testified that the tracks of the car showed to have been on the left side until it reached a point about 150 feet west of the parked car where it turned on to the right side. They found two pools of blood, one about 45 feet west and north of the parked car, the other pool of blood was about 150 feet west and north of the parked car. Proceeding with their investigation, the officers went west on the highway for about a quarter or a half mile and stopped at the residence of Tobe Bailey. Their reason for stopping was that they saw car tracks, which bore evidence of having recently turned in there. They found two cars, one, an old Chrysler, and the other a Ford V-8 coupe. The left fender on the V-8 coupe was badly bent up, the lights on the left side were broken, the headlight and both bulbs being broken. This car was taken to town and examined the next morning by the sheriff and other witnesses, after being placed on a rack and raised by air pressure so it could be examined underneath. They found appearances of something having dragged on the grease and oil pan, and what they took to be blood spots, but no blood test was made by one competent to do so, which should have been done. They also removed a piece of blue cloth, and some hair and skin. The cloth was introduced in evidence and was inspected by the jury in comparison with the overalls worn by deceased. The sheriff and his deputy found defendant inside the house of Tobe Bailey on a bed, with blood on his face and head, and Mrs. Bailey was washing the same off. Both of the officers testified that de-

fendant was drunk at the time they found him. Other officers testified that he was drunk when brought to the jail. Defendant was placed in jail and afterwards charged with murder.

Dr. I. L. Cummings testified to examining deceased as to his injuries, and to his death on November 24, 1936, by reason of said injuries. Other witnesses testified for the state in reference to bringing the car, examining the same, and their testimony corroborated that given by the sheriff and his deputy.

The defendant, testifying in his own behalf, contended that the killing was done by someone other than himself; that he had passed the scene of the accident about 6:15 p. m.; that there was no parked car there at that time, and that he had no accident. His testimony was that he lived in Ketchum, Craig county, Okla.; that he worked for the Arrow Drilling Company, and that for two months prior to November 21, 1936, he had been in the hospital with a hurt leg and back and a skull fracture; that a few days prior to the 21st day of November, 1936, he had come to Oklahoma City from Ketchum, and from there to the city of Ada, on November 21st, arriving there about 2:30 p. m., and without stopping went direct to the residence of Tobe Bailey for the purpose of trying to collect $12 which Tobe Bailey owed him for an old Chrysler car which he had sold him; that he remained there 30 or 40 minutes and returned to the city of Ada; that he was trying to see a driller for the purpose of getting a job for a boy named Louie Redman, who lived at Tobe Bailey's. After being in town for a short while he went to a cafe known as John's place, and there met a man and his wife and some girl, and they had a bottle of beer. After talking to these parties whom he claimed to have known before, they went in this party's car for a ride over the city. The man and his wife rode in the front seat and defendant and the girl rode in the back seat. Just before six o'clock they returned to John's place where defend-

ant had parked his car, and when he got out of the car he met Louie Redman, the boy for whom he was trying to get a job, and another party by the name of Doc Corbett. He had a conversation with Louie Redman in reference to the job and he asked defendant, "What's the matter with your face?" He then explained that he had some words with the girl with whom he was riding in the back seat, and that she had struck him with a pocket book which had a brass knob and had scratched his face. This evidence was given by him in explanation of why Mrs. Bailey was seen later washing the blood from his face at the time the officers arrested him in the Bailey home. This testimony was corroborated by Louie Redman, Doc Corbett and Mrs. Bailey. He testified that he left John's place in his own car going west to Tobe Bailey's place just about dark. A weather report was introduced by defendant and showed that artificial light was necessary on November 21st, at 5:48 p. m., in order to distinguish objects on the outside. That he remembered turning on his lights just before he got to the bridge. That he did not see any car parked by the road fixing a tire; that he passed several cars on the highway; that he did not run into any car, or strike anybody. That it was "good dark" when he got to Tobe Bailey's. He got out of his car, went into the house and talked with Mr. and Mrs. Bailey. He told her he was sick, had a headache, and that a girl had scratched his face. That he did not feel like eating supper, and that he took four or five aspirins which were in a box and attempted to go to sleep. He thinks he slept about an hour and was asleep when the officers came; that Mrs. Bailey waked him up and was washing his face when the officers came in the house. He testified that he was not drunk, or under the influence of intoxicating liquor, but had only had a part of one bottle of beer; that the officers arrested him and took him to jail and also took his car; that the information which he received from the officers was the first that he knew that anybody had been hurt. In explanation of the condition of his car he claimed that

he had a wreck at his home in Ketchum a few days prior to November 21, 1936. That he turned a sharp corner and his car skidded into a mail box. That the head light and the bulbs in the left light were broken. That several little rods were broken on the car at that time and that the left fender was bent. Several witnesses from Ketchum corroborated defendant's testimony on this point, and also the garage man who worked on his car and who testified that he fixed the car but did not straighten the fender and did not fix the head light. Defendant, two days after his arrest, gave a written statement to the county attorney and the sheriff of Pontotoc county. There was a sharp conflict in the statement so made and the evidence given by defendant at the time of the trial. From the above statement it will readily be seen that there was conflicting testimony which was passed on by the jury in this case. They had the opportunity to see and hear the witnesses in this case, to observe their demeanor upon the witness stand, to examine the automobile, the glass that was found at the scene of the accident, to compare the cloth found by the officers on defendant's car and compare it with the clothing worn by the deceased at the time of the killing. Part of the evidence relied upon by the state was circumstantial. After hearing the testimony and a fair presentation of the law in the case by the court, the jury found the defendant guilty, and under the prior decisions of this court this verdict will not be set aside where there is sufficient evidence to sustain it, as there is in this case.

It is contended by defendant that the court erred in permitting the county attorney to propound certain questions to defendant which were asked him at the time he made a statement to the county attorney and sheriff, two days after his arrest, and the refusal of the court to permit the whole statement to be presented to the jury as requested by defendant. Under the law the contention of defendant is correct. Foster v. State, 8 Okla. Cr. 139, 126 P. 835; Wigmore on Evidence (2d Ed.) vol. 4, p. 508, sec. 2113; 16 C. J. pages

571, 634, and 723; 2 A.L.R. pages 1017 and 1022; Levy v. State, 49 Ala. 390; People v. Murphy, 39 Cal. 52; Williams v. State, 69 Ark. 599, 65 S. W. 103, 12 Am. Cr. Rep. 110; Morrow v. State, 48 Ind. 432. And had there not been a waiver of defendant of this right as shown by the record in this case, the same would have to be reversed and remanded for a new trial. The court at first refused the defendant the right to offer the whole of the statement, but afterwards the state placed upon the witness stand a witness, Kittie Bowen, who had taken the statement in shorthand and transcribed the same and who counsel for defendant admitted was qualified and competent to take the statement and properly transcribe the same. After testifying that she had taken the statement in shorthand, and properly transcribed the same on the typewriter, and the county attorney was preparing to introduce the statement in evidence, counsel for defendant said:

"By Mr. Grigsby: We will admit those are the notes, and they can be admitted as a part of the evidence in this case. The county attorney can use them for whatever purpose he wants."

It will thus be seen that the whole of the statement was introduced in evidence by the admission of counsel for defendant, and the right to refer to it by the county attorney in his closing argument cannot be questioned after the admission made by counsel for defendant. When this opinion was first written in this case neither the brief of defendant or the state called attention to this admission upon the part of counsel for defendant.

Certain witnesses were introduced by defendant who testified that they passed by the place where the killing occurred and after it happened. That they saw the car standing by the side of the road jacked up and in their opinion it was eight or ten feet from the bar pit on the south side of the road. This evidence is in direct conflict with the testimony of the officers and others who measured the distance,

and the jury, no doubt, came to the conclusion, as they had the right to do, that the testimony of the officers was true, as the other parties were passing in a car and did not stop to examine the location and the distance.

It is urged by defendant that certain incompetent and irrelevant evidence was introduced. In this connection defendant was asked as to what was the reputation of "John's place." He answered that in his opinion it was a sandwich shop, and when asked if he did not know it was a beer joint, the court properly sustained an objection. The defendant was charged with murder and the reputation of "John's place" was immaterial in this case, but nothing with reference to this was of sufficient importance to require a reversal of this case upon this point.

The cross-examination of Juanita Hudson, a witness offered by defendant, is complained of by defendant. This witness was about 14 years of age, and had been before the juvenile court of Pontotoc county. The county attorney questioned her with reference to this matter; the court held that he could ask her if she had been convicted and placed on probation. This is complained of by reason of section 1729, Okla. Stats. 1931 (Okla. St. Ann., tit. 10, sec. 101). The evidence given by the little girl was only cumulative of the testimony given by several witnesses. It revealed nothing of a substantial nature and in our opinion in no way had any influence on the jury in reaching its verdict in this case. We have examined the other objections and do not find any that would warrant a reversal of this case.

Other errors assigned by the defendant are that the court erred in refusing certain requested instructions and that the county attorney committed reversible error by statements made in his closing argument to the jury. The instructions given by the court were very fair and fully presented the issues of the case and covered the points asked in the requested instructions. The court gave a very fair and complete instruction upon the question of circum-

362

stantial evidence as favorable to the defendant as could be expected. The closing argument of the county attorney appears in the case-made and it was a very fair and strong presentation of the state's case. It is further urged by the defendant that the punishment in this case is excessive. We have carefully reviewed this record from all standpoints, and have come to the conclusion that the ends of justice would be met by modifying the judgment in this case from a period of 20 years in the penitentiary to a period of ten years in the penitentiary. In doing this we have taken into consideration the fact that a statement was taken from the defendant by the county attorney at a time that he was in jail and without counsel to represent him and before he had a preliminary examination, and there is nothing in the record to show that he was warned that any statement which he might make could be used against him.

For the reasons above stated, it is the judgment of the court that the sentence in this case be modified from 20 years in the penitentiary to ten years in the penitentiary, and as so modified is affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.