## SIMON SCOTT v. STATE.

No. A-9395. Sept. 2, 1938.
(82 P. 2d 684.)

Mathers & Mathers, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Bob Shelton, Co. Atty., of Chickasha, for the State.

BAREFOOT, J. The defendant was charged by information in Grady county with the crime of larceny, was tried, convicted and sentenced to serve a term of four years in the penitentiary, and has appealed.

The defendant assigns nine errors, but in his brief only presents errors that the evidence is insufficient to uphold the verdict; that the prosecuting witness being an accomplice, there was not sufficient corroboration of his testimony, and that the court erred in overruling his motion for continuance.

The defendant was charged jointly with Bob Stonecipher, and Jack Scott, with the larceny of a hog, the property of Jess Todd, in Grady county, Okla., on or about May 3d, 1936. Bob Stonecipher plead guilty, and was sentenced to serve a term of 10 years in the penitentiary. While serving this term he was returned to Grady county and testified for the state against his codefendants. His testimony was that he became acquainted with Simon Scott and his younger brother, Jack Scott, a few months prior to the alleged offense; that these three parties and the father of defendant and Jack Scott went in a Ford car belonging to Jack Scott, from Duncan, in Stephens county, the home of defendant, to the home of Jack Shaw, a brother-in-law of the Scotts, who resided in Grady county. They then went to Rush Springs and returned to the Shaw home. That none of the Shaw family or any one else was there. That while they were there a hog came up, and some conver-

sation was had about killing it, and that he finally took a .22 rifle and killed it. It was a spotted hog. After they had killed it, Jack Scott and this defendant loaded it into the back end of the car and took it to the home of this defendant in Duncan. They arrived in Duncan about dark. The defendant Simon Scott was with them at the time the hog was killed at the Shaw home in Grady county, and returned with them in the car to Duncan. The witness and Jack Scott skinned the hog and cut it up in the home of this defendant. They then loaded the head, hide and entrails in the Ford car and started to take them away, when they were seen by police officers and picked up and arrested on the streets of Duncan and taken to police headquarters. The witness testified that this defendant did not help to dress the hog at his home as he was sick and went to bed, and was rather reluctant in his testimony against the defendant.

Jess Todd testified to the ownership of the hog; that he missed it from his place the day after it was taken. He was called to Duncan and saw the hide and entrails and identified the hide as being that taken from his hog. He lived only a short distance from Jack Shaw, who was a brother-in-law of the Scott boys. Jack Scott had visited his uncle at one time.

The officers of Duncan testified to arresting the defendants, Bob Stonecipher and Jack Scott, and taking from their possession the hide, head and entrails of the hog, and of searching the home of the defendant Simon Scott on the same night and of finding the meat of a hog, which had been cut into small pieces which was in a pan in the kitchen of defendant's home. They also testified to the identification of the hide by the witness Jess Todd.

The defendant, his brother Jack Scott, and his wife, all testified that the defendant did not accompany the witness Stonecipher and Jack Scott to Shaw's home on the date the hog was killed, and brought to the home of

defendant. The defendant Jack Scott testifying that Stonecipher was driving the car and run into a hog and broke its back, and that he got a .22 rifle and that Stonecipher killed the hog; that they loaded it into the car and brought it to the home of Simon Scott with the intention of finding the owner and paying him for the same as soon as they found him, but by reason of their arrest they had not had an opportunity to do so.

It will thus be seen that there was a direct conflict in the testimony of the state and the defendant. The jury heard the witnesses, had an opportunity to observe their demeanor upon the witness stand, and under the law it was for them to say whom they would believe. It has often been held by this court that it will not interfere and set aside a verdict of the jury where there is reasonable grounds to support it. Haddock v. State, 64 Okla. Cr. 353, 81 P. 2d 339; Bryant v. State, 63 Okla. Cr 270, 74 P. 2d 624; Cooper v. State, 61 Okla. Cr. 318, 67 P. 2d 981; Brents v. State, 53 Okla. Cr. 26, 6 P. 2d 1080.

We cannot agree with the contention of the defendant that the evidence does not sufficiently corroborate the witness Stonecipher. The property was found in the home of defendant. It had evidently been skinned and dressed in his home. Defendant was home at the time, and while the evidence was that he did not participate in it, he knew it was being done, as he testified that Stonecipher told him that he had been given the hog by his brother. The jury had a right to take into consideration the fact of the unusual manner of dressing the hog in defendant's home, and the attempt to conceal and do away with that part which could have been identified. Defendant was a man of mature years. The proof showed that he had been to the penitentiary upon two prior occasions for the crimes of burglary and robbery, and had also been convicted in the federal court and served a jail sentence. His brother, Jack Scott, was only

17 years of age. The jury evidently considered that the burden should not be carried by this 17-year-old boy, but that the defendant should pay his part of the penalty.

In the case of Hufford v. State, 61 Okla. Cr. 141, 66 P. 2d 529, it is said (page 532):

"It is not essential that corroborating evidence shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to some material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or the circumstances thereof." Rice v. State, 60 Okla. Cr. 398, 64 P. 2d 1240; Bond v. State, 54 Okla. Cr. 39, 14 P. 2d 425; Underwood v. State, 36 Okla. Cr. 21, 251 P. 507; McCurdy v. State, 39 Okla. Cr. 310, 264 P. 925; Patterson v. State, 42 Okla. Cr. 255, 275 P. 387; Bradley v. State, 43 Okla. Cr. 456, 279 P. 920; Morton v. State, 46 Okla. Cr. 361, 287 P. 1087.

It has often been held that the possession of recently stolen property is a circumstance to be considered by the jury, and to be given such consideration as the jury deems advisable in arriving at their verdict. Nicholson v. State, 18 Okla. Cr. 491, 196 P. 730; Gunter v. State, 17 Okla. Cr. 404, 189 P. 200.

The overruling of the motion for continuance filed by the defendant was within the discretion of the trial court, under the facts and the law. Defendant was represented by able counsel and in an able manner. There is nothing in the record to show that his health was so impaired that he was not able to present the defendant's defense in the proper manner.

For the reasons above stated the judgment of the district court of Grady county is affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.