DICKINSON *v.* STATE OF INDIANA.

[No. 27,968.   Filed June 14, 1944.]

*Elmon M. Williams,* of Indianapolis, for appellant.

*James A. Emmert,* Attorney General, *Frank Hamilton,* First Assistant Attorney General, and *Frank E. Coughlin,* Deputy Attorney General, for the State.

O'MALLEY, J.—The appellant was indicted on a charge of murder in the first degree, predicated upon the death of the appellant's wife by gunshot wounds. The appellant pleaded not guilty and also filed a plea of insanity. He was tried and found guilty of murder in the second degree, and thereafter was sentenced to the Indiana State Prison for life. In due time he filed his motion for a new trial, which motion was overruled, and an appeal prayed and perfected.

The overruling of the motion for a new trial is assigned as error, and the only questions stressed in this court are: 1. That the Johnson Circuit Court erred in refusing to permit the witness Lyman Dragoo to state to the jury, what he had heard the appellant say on the night of the crime. This statement was to a person other than the decedent, and merely stated that the other person should reserve an "alley" (bowling alley) and that appellant would go out and get some food and return a little later. 2. That the court refused to permit the appellant to give the conversation had with his wife at the bowling alley where he worked, just prior to the time that the wife left the bowling alley and went to the filling station, where the alleged crime was committed. The offer to prove under this claim of error was that the appellant said, " 'Dorothy, I want to give you some money for the support of Roy Lee and talk to you about my seeing him over Sunday,' and that she replied, 'I don't want to talk to you in here. See me outside. When I leave you can meet me down the street.' " 3. That the court refused to permit the conversation had at or about the time that the shots were fired, which conversation as

offered was as follows: " 'Dorothy, I want to talk to you about our matter.' He said, 'I have talked to an attorney' and she replied, 'Yes, I understand you have, Bill.' He said, 'My attorney has told me I ought to pay you $4.00 per week for Roy Lee and since Sunday is my Sunday off, I would like to have Roy Lee, Sunday.' And she replied, 'You can't have him.' And he replied, 'Now, Dorothy, let's talk this matter over as sensible people. Why don't you come over to my room and let's talk the matter over.' And she replied, 'You are trying to frame me so I can't get my divorce.' And the witness replied, 'Dorothy, you don't think you married a man like that, do you?' "

On the 17th of December, 1942, at about 9:40 p. m., the death of the wife took place at a filling station which was located about a block from the bowling alley where the appellant was employed. At this time the appellant and his wife were separated, and were parties to a divorce proceeding then pending in the Johnson Circuit Court. The evidence shows that the decedent was the appellant's second wife; that they had been separated a matter of two or three weeks; and that the appellant was endeavoring to make a reconciliation with the decedent.

On the particular night in question, the appellant's wife went to the place where appellant was employed and did some bowling. While in that place, she talked with appellant, and having finished her game, she went to the street and proceeded to the filling station. The appellant, who was the only witness who testified on this particular phase of the matter, said that as his wife left the bowling establishment she motioned with her head for him to follow; that he did follow her, and within a few minutes overtook her at the filling station. That when he arrived at the filling station they started

to discuss their trouble, and that his wife, for some reason, shoved him and caused him to lose his balance. When this happened he pulled his hands from his pockets in an attempt to maintain his balance, and the revolver which had been in his pocket fell to the ground; that they both made a grab for the weapon and during the scuffle which followed two shots were fired, both of which lodged in the body of the wife, causing her death. The appellant then placed the revolver to the back of his right ear and fired one shot into his head.

Second degree murder, the crime of which appellant was convicted, involves the elements of a killing purposely and maliciously done. § 10-3404, Burns' 1942 Replacement, § 2407, Baldwin's 1934; *Landreth* v. *State* (1930), 201 Ind. 691, 171 N. E. 192, 72 A. L. R. 891.

While the intent and malice necessary to sustain a charge of murder in the second degree may be inferred from circumstances and the use of a deadly weapon, yet the defendant in a trial on such charge may introduce evidence to rebut this inference. *Landreth* v. *State, supra.*

However, to be competent, the evidence must be connected with or explanatory of some phase of the alleged criminal act. The testimony offered by the witness, Lyman Dragoo, would not tend to prove or disprove intent or malice. It was a self-serving declaration made before the occurrence and not connected with or explanatory of the alleged crime. Nor would it shed any light on any phase of the actions of the appellant. In excluding this evidence the court did not commit reversible error. *Davidson* v. *The State* (1893), 135 Ind. 254, 34 N. E. 972; *Durst* v. *State* (1921), 190 Ind. 133, 128 N. E. 920.

On the other hand the conversation which took place at the bowling alley between the appellant and his wife, and which concerned the custody of their son, might, if believed by the jury, throw some light on his mental attitude immediately before the shooting. It might also explain why he left the bowling alley and followed the decedent. It is closely connected with and explanatory of the occurrence.

The conversation purported to have been had at the actual place of the crime, and at or about the time of its commission, would certainly tend to show the feeling or lack of feeling between the appellant and the decedent as of that time. This conversation was a part of the very happening and if detailed to the jury might have assisted them in reaching a correct result. It was on one of the subjects of difference between the parties and should have been admitted. *Wood* v. *The State* (1883), 92 Ind. 269; Underhill's Criminal Evidence, 4th Ed., §§ 192 and 202.

Furthermore, a part of this conversation was introduced by the State, and certainly the appellant was entitled to introduce the balance of the conversation, for whatever it might be worth. *Durst* v. *State, supra.*

In oral argument, the State admitted that the exclusion of this evidence constituted error, but insisted that it was harmless error. With this we do not agree. The acts of appellant might import or be construed as importing criminality when viewed alone, but when examined in the light of and in connection with what was said, they might be considered consistent with innocence.

In *Hamilton* v. *The State* (1871), 36 Ind. 280, 282, 283, this court said:

"It is well established by the authorities, that in all cases, civil or criminal, where evidence of an act done by a party is admissible, his declarations, made at the time, having a tendency to elucidate, explain, or give character to the act, are also admissible. They are a part of the transaction, and for that reason are admissible; and it makes no difference, so far as the admissibility of the declaration is concerned, whether it be in favor of, or against the party making it. If the act is one of alleged criminality, and the accompanying declaration tends to show it to be innocent, it is equally admissible as where the tendency is to show the criminality of the act; and it may be given in evidence by the defendant as well as by the State."

This case is cited with approval and as authority in *Morrow* v. *The State* (1874), 48 Ind. 432. See also *Diehl* v. *State* (1901), 157 Ind. 549, 62 N. E. 51; *Haddock* v. *State* (1938), 64 Okla. Cr. 353, 81 P. (2d) 339.

Because of the errors above indicated, this judgment is reversed with instructions to sustain the motion for a new trial.

NOTE.—Reported in 55 N. E. (2d) 325.