Jesse A. McCORMICK, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1280S449.

Supreme Court of Indiana.

July 30, 1982.

John G. Bunner, Barry L. Standley, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Murder, Ind.Code § 35–42–1–1 (Burns 1979) and sentenced to fifty (50) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in admitting Defendant's statement into evidence.

(2) Whether the trial court erred in admitting testimony about Defendant's involvement in a separate unrelated crime.

(3) Whether the trial court erred in sustaining the State's objection to a question asked of a prospective juror on voir dire.

(4) Whether the trial court erred in refusing to give Defendant's tendered instruction relating to intervening cause of death.

(5) Whether the trial court erred in refusing to give Defendant's tendered instructions upon Battery and Reckless Homicide as lesser included offenses.

On October 5, 1978, Defendant and the victim were incarcerated in the same cellblock at the Vanderburgh County Jail. At about 2:00 p. m. Defendant followed the victim into the victim's cell and began to strangle him. Another prisoner discovered the incident and screamed that the victim was being killed. The rest of the prisoners in the cellblock arrived at the victim's cell as the Defendant was leaving. The victim was unconscious and his pulse and respiration were restored after emergency medical treatment. He died on January 5, 1979 of pneumonia and respiratory failure.

\* \* \*

## ISSUE I

John Englebrecht, a civilian jailer who later became a sheriff's deputy, was summoned to the cellblock. Upon arrival he found medical personnel working on the victim. After the victim was removed, Englebrecht, pursuant to instructions, took the defendant to "the second floor jail office" where the sergeant on duty was located. Enroute, Englebrecht read Defendant his *Miranda* advisements from a card. At trial the State asked if Defendant had talked about what happened, and Defendant interposed a two pronged objection which was overruled:

"BUNNER: Now, we're going to object to anything that he said on the way to the office. One, this witness has stated that he read the *Miranda* Rights in the office, as I recall, when he was taken to

the, to the office and in the office. Two, this is not the ordinary situation. The defendant was already in jail and had a lawyer and obviously his lawyer was not called." R. at 235.

The State returned to the subject of the *Miranda* advisements and then asked what Defendant had told the witness as they were coming up from the cell. Defendant objected upon the grounds that the witness, who was not a police officer at that time, did not have the power to advise Defendant of his rights. The objection was overruled and Englebrecht mentioned a supplemental report, which he had made after the incident and which he was allowed to use to refresh his memory. Defendant had stated that the victim entered Defendant's cell, hit the defendant on the chest and then left. Defendant followed the victim and choked him.

Defendant contends that there is nothing in the record to show that he had waived his rights or that he had been asked if he wanted an attorney. He reasons that, since he was being held on unrelated felony charges and had an attorney of record, the State's questioning him, without reasonable notice to his counsel, violated his Sixth Amendment rights.

■ The record does not show that Defendant had counsel for the charged offense or for the unrelated felony upon which he stood charged at the time he made the statements; however, even if he had secured counsel, his statement would not be rendered inadmissible *per se*. *Kern v. State*, (1981) 426 N.E.2d 385, 387; *Jackson v. State*, (1978) 268 Ind. 360, 364, 375 N.E.2d 223, 225.

Englebrecht testified that he did not ask Defendant any questions. This evidence, in light of our standard of review for confessions, *Jackson v. State*, (1980) Ind., 411 N.E.2d 609, 610–11, would permit the trial court to find that, since there was no interrogation, Defendant's statements were spontaneous and therefore admissible without *Miranda* warnings. *Kennedy v. State*, (1977) 267 Ind. 322, 325, 370 N.E.2d 331, 332; *Jennings v. State*, (1974) 262 Ind. 476,

481–82, 318 N.E.2d 358, 361. We find no error in the admission of Officer Englebrecht's testimony.

### ISSUE II

■ Over objection, State's witness Michael Thomas was allowed to relate a statement that Defendant had made approximately two hours before the choking incident which gave rise to the Murder charges:

"A. Oh, well he said, you don't think, wait, he said, you don't think I would kill you, he said, I haven't got nothing to loose no way, you know, cause my wife had, beside my wife had took everything I own anyway and I'm not going to get out no way. And *I already have killed a guy down on the, stabbed a guy down by the river bank and all.* * * * " R. at 275 (emphasis added).

This had not been the first encounter between the victim and Defendant on that day. Thomas testified that early in the morning, the victim had asked the defendant for a match to light a cigarette. An argument ensued in which Defendant used profanity and threatened to kill the victim, if he did not cease annoying him.

After lunch the men in the cellblock had been playing cards, and the victim stated that he wanted to die. In response Defendant made the above quoted statement and began to choke the victim who "wriggled" out of the grip and said that he did not want to die.

Defendant contends that the trial court erred in allowing Thomas to relate the statement inasmuch as it was evidence of a separate and unrelated crime.

"Generally evidence of criminal activity other than that charged is inadmissible on the question of guilt. However, such evidence may be admitted to show intent, motive, purpose, identification, or common scheme or plan." *Cobbs v. State*, (1975) 264 Ind. 60, 62, 338 N.E.2d 632, 633. The trial court admitted the evidence for its bearing upon Defendant's intent and motive shortly before the assault. We find no error in this ruling. Our decisions allow the admission

of evidence of unrelated criminal activity where the witness' testimony is necessary to complete the story of the criminal transaction, *e.g., Clemons v. State,* (1981) Ind., 424 N.E.2d 113, 117 (cases cited therein); *Lee v. State,* (1977) 267 Ind. 315, 320, 370 N.E.2d 327, 329, or where the evidence may reveal the accused's state of mind. *E.g., Choctaw v. State,* (1979) Ind., 387 N.E.2d 1305, 1307; *Dickinson v. State,* (1944) 222 Ind. 551, 556, 55 N.E.2d 325, 327.

Defendant's actions and statements demonstrated a pattern of hostility between himself and the victim on the day of the choking. His casual reference to a previous assault was relevant to the jury's determination of his state of mind with respect to whether his conduct had been knowing, as charged in the information.

## ISSUE III

During the voir dire examination of prospective jurors, the following occurred:

"Q. And Mrs. Calvert?—. Mrs. Calvert, the crime of murder is what the judges and lawyers call a specific intent crime. A guy has got to intend to do something, specifically. In his mind he intends to do it.

"KNIGHT: I'm going to object. The charge in this particular case is that the defendant knowingly took the life of another person. The statutory definition of the word knowingly is mischaracterized by that question and would control in questioning the jurors concerning whether they would follow the law." R. at 447.

Defendant contends that the trial court erred in restricting his questions of the jury upon an element of the crime.

The information charged that Defendant "did knowingly cause the death of another human being * * *." Based upon *Williams v. State,* (1980) Ind., 402 N.E.2d 954, Defendant argues that since the use of the word "knowingly" in the definition of the offense converts that offense to a specific intent crime, Murder is a specific intent crime, and therefore he should have been allowed to inquire about the jurors' feelings toward the concept of specific intent.

The trial court has broad discretionary power to regulate the form and substance of the voir dire. *Wickliffe v. State,* (1981) Ind., 424 N.E.2d 1007, 1008. The function of the voir dire is to ascertain whether or not the prospective juror can render a fair and impartial verdict in accordance with the law and the evidence, *Blackburn v. State,* (1979) Ind., 390 N.E.2d 653, 656, and not to condition them to be receptive to the questioner's position. *Everly v. State,* (1979) Ind., 395 N.E.2d 254, 255. Defense counsel's inquiry carried the potential for conditioning the jurors toward his view of the elements of the charged offense, a practice which we have stated should be scrutinized by the trial court. *Robinson v. State,* (1973) 260 Ind. 517, 521, 297 N.E.2d 409, 412. We find no abuse of discretion in the trial court's ruling.

## ISSUE IV

Defendant next contends that the trial court erred in refusing his tendered instruction No. 5:

"If you find from the evidence that Douglas Overby died as a result of an independent intervening cause, not related to the alleged acts of the defendant, then your verdict should be not guilty as charged in the information." R. at 526.

The concept of an intervening cause of death was covered in Final Instruction No. 33:

"It is the law of this State that one who inflicts an injury upon another is deemed by the law to be guilty of Murder, if the injury contributes mediately or immediately to the death of such other. Thus, the unlawful act of the accused, if any, need not be the sole cause of death; the test of responsibility is whether the act to the accused contributed to the death, and, if it did, he is not relieved of responsibility by the fact that another cause also contributed. So if you find, beyond a reasonable doubt, that Jesse A. McCormick, knowingly caused injuries to Douglas Overby in the manner described in the information, and you further find

beyond a reasonable doubt that those injuries contributed to his death, mediately or immediately, then you may find the defendant guilty as charged in the Indictment. If, However, there is reasonable doubt in your mind as to whether some other factor, was the sole and only cause of death, or there is reasonable doubt that any act of the defendant contributed, mediately or immediately, to his death, then you must find the defendant not guilty of the crime of murder, manslaughter and involuntary manslaughter." R. at 556.

Additionally, in Final Instruction No. 32 the trial court defined the terms, "mediate" and "immediate." The refusal of an instruction is not grounds for reversal when the substance thereof is adequately covered by other instructions which are given. *Loyd v. State*, (1980) Ind., 398 N.E.2d 1260, 1269, *cert. denied*, (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

## ISSUE V

■ Lastly Defendant contends that the trial court erred in refusing his two tendered instructions upon lesser included offenses.

The first related to Battery:

"The lesser included offense of Battery is defined by statute as follows: A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits Battery, a Class B Misdemeanor. However, the offense is a Class A Misdemeanor if it results in bodily injury to any other person, and a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon. To convict the defendant, the State must have proved each of the following elements: The defendant: 1. Knowingly or intentionally, 2. touched another person, Douglas Overbey, 3. in a rude, insolent or angry manner. If the State failed to prove each of these elements beyond a reasonable doubt you should find the defendant not guilty. If the State did prove each of these elements beyond a

reasonable doubt, you should find the defendant guilty of Battery, a Class B Misdemeanor. If you further find beyond a reasonable doubt that the Battery resulted in bodily injury to another person you should find the defendant guilty of Battery, a Class A Misdemeanor. If you further find beyond a reasonable doubt the Battery resulted in serious bodily injury to another person you should find the defendant guilty of Battery, a Class C felony." R. at 528.

The undisputed evidence in the record shows that the victim was cyanotic, was not breathing, and had no detectable pulse after the attack. A nurse at the jail administered emergency cardio-pulmonary resuscitation before the victim was transported to the hospital. The attending physician at the hospital emergency room testified that the victim was unconscious and had a bluish discoloration around his mouth which indicated an inadequate oxygen supply to the bloodstream and the body. From these symptoms the physician surmised that the victim had suffered brain damage. The victim was also suffering from continuous seizure activity which necessitated the administration of anticonvulsant drugs.

Based upon this evidence if the defendant were to be found guilty of Battery, Ind. Code § 35–42–2–1 (Burns 1979), it could only have been a Class C felony. See Ind. Code § 35–41–1–2 (Burns 1979) (defining "serious bodily injury"). The injuries inflicted upon the victim's body were so serious that to allow the jurors to return a verdict of guilty of Battery, Class B Misdemeanor or Battery, Class A Misdemeanor would require them to speculate upon a factual situation not supported by the evidence. *E.g., Hash v. State*, (1972) 258 Ind. 692, 698, 284 N.E.2d 770, 773. Only a portion of the tendered instruction was relevant to the evidence and the trial court was not bound to modify it. *Mullins v. Bunch*, (1981) Ind., 425 N.E.2d 164, 166; *Bohan v. State*, (1923) 194 Ind. 227, 235, 141 N.E. 323, 326. *See Gayer v. State*, (1965) 247 Ind. 113, 119, 210 N.E.2d 852, 856. "It is not error to refuse an instruction unless it ought to be given precisely in the terms

prayed." *Cole v. State*, (1930) 203 Ind. 616, 620, 173 N.E. 597, 598; *Schaffer v. State*, (1930) 202 Ind. 318, 326, 173 N.E. 229, 232; *Culley v. State*, (1923) 192 Ind. 687, 689, 138 N.E. 260.

Defendant's second tendered instruction upon a lesser included offense related to Reckless Homicide:

"The Court instructs you that the offense charged in the information/indictment includes the offense of Reckless Homicide, which is defined by the statute of our State as follows: 'A person who recklessly kills another human being commits reckless homicide, a Class C felony.'" R. at 531.

This instruction suffers from the same infirmity as did the tendered instructions upon the lesser included offense of Criminal Recklessness in *Johnson v. State*, (1982) Ind., 435 N.E.2d 242, 246 and *Smith v. State*, (1981) Ind., 422 N.E.2d 1179, 1184. In *Smith* we noted that "recklessly" is a term of art because it has a statutory definition, Ind.Code § 35-41-2-2(c) (Burns 1979), and that the use of a term of art in an instruction requires a further instruction on the definition of that term citing *Martin v. State*, (1974) 262 Ind. 232, 246, 314 N.E.2d 60, 70, *reh. denied*, 262 Ind. 232, 317 N.E.2d 430, *cert. denied*, (1975) 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 841. The tendered instruction did not contain a definition of the term "reckless" nor was it accompanied by a separate tendered instruction which defined the term. We find no error in the trial court's refusing it.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.