Ralph **DODSON**, Appellant
**(Petitioner Below),**

v.

**STATE of Indiana, Appellee**
**(Respondent Below).**

No. 884S323.

Supreme Court of Indiana.

Jan. 28, 1987.

Susan K. Carpenter, Public Defender, Rick Ranucci, Deputy Public Defender, Suite 501, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

In 1976, appellant Ralph Dodson was accused of fatally shooting one James T. Young. The evidence at trial showed that Dodson mistakenly believed the victim was a close relative of Dodson's estranged girlfriend. Appellant was convicted after a jury trial of murder, Ind.Code § 35–13–4–1 (Burns 1975) [repealed 1977, current version at Ind.Code § 35–42–1–1 (Burns 1985 Repl.)]. He was sentenced to life imprisonment. This Court affirmed his conviction on direct appeal. *Dodson v. State* (1978), 268 Ind. 667, 377 N.E.2d 1365.

Dodson subsequently filed a petition for post-conviction relief. He now appeals the trial court's denial of that petition, raising the following issues:

1) Whether a witness who testified at trial was induced by police to elicit incriminating statements from Dodson, in violation of Dodson's Sixth Amendment right to counsel;

2) Whether the trial court violated Dodson's right to confront the witnesses against him by proceeding to trial in his absence;

3) Whether Dodson's epileptic seizure during trial violated his right to a fair and impartial jury, and whether counsel was ineffective for failure to seek a mistrial on this ground;

4) Whether his trial attorney rendered ineffective assistance in failing to seek a formal determination of Dodson's mental competence, and

5) Sufficiency of the evidence at trial.

As petitioner, Dodson bore the burden of establishing his grounds for relief by a preponderance of the evidence. Rule PC 1, § 5, Ind.Rules of Procedure for Post-Conviction Remedies. The trial court which heard the post-conviction proceeding is the sole judge of the weight of the evidence and the credibility of witnesses. We will reverse only when the evidence is without conflict and leads exclusively to a conclusion contrary to that reached by the post-conviction court. *Silvers v. State* (1986), Ind., 499 N.E.2d 249.

■ We note that several of the issues presented here were available on direct appeal and normally would have been waived. PC Rule 1, § 8, Rules for Post-Conviction Remedies. However, the State chose to address the issues on the merits at the post-conviction hearing, rather than raising the defense of waiver. The post-conviction court similarly ignored waiver. Therefore, we will review these questions on the merits. *Richardson v. State* (1982), Ind., 439 N.E.2d 610.

*I. Jailhouse Informant*

Dodson and Gerald Myers were housed in the same jail for several months while they were awaiting trial on unrelated charges. Myers was a trustee and thus had greater freedom of movement within the jail and more interaction with the jailers than ordinary inmates. Myers helped quiet and advise troubled prisoners, and Dodson began confiding in him. On one occasion, the jailers overheard through the jail intercom a conversation between Dodson and Myers. The jailers routinely used the intercom to monitor activities within the facility.

Afterward, the jailers confronted Myers and asked that he relay details of the conversation. Myers refused, so the jailers threatened to subpoena him to obtain the information. Myers maintained his silence but continued to speak privately with Dodson. Dodson eventually admitted his role in the murder to Myers and conveyed details of the crime. Myers also was seen looking at Dodson's papers while Dodson slept. Myers subsequently revealed Dodson's admissions to the jailers and later testified at trial without objection.

Dodson now alleges that Myers' testimony was improperly admitted. He claims that Myers was induced by police to elicit incriminating statements from him, in violation of his Sixth Amendment right to counsel. The post-conviction court noted that Dodson had waived this issue by failing to object at trial but proceeded to determine that the testimony was properly admitted.

The Sixth Amendment guarantees an accused the right to counsel at all critical stages of prosecution. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). This right is violated when the government intentionally creates a situation likely to induce an incriminating statement from a charged defendant in the absence of counsel. *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

The Supreme Court has applied this principle in finding a Sixth Amendment violation where an inmate was hired by police to reveal incriminating statements made by fellow inmates. *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). In *Henry,* police approached a jail inmate and told him to be alert to statements made by fellow inmates. However, the police told the inmate not to initiate conversations with Henry or question him. When the police subsequently contacted the inmate, he reported an incriminating statement made by Henry to him. The informant was paid and later testified at trial. Before finding a Sixth Amendment violation, the Supreme Court stated:

The question here is whether under the facts of this case a Government agent "deliberately elicited" incriminating statements from Henry within the meaning of *Massiah.* Three factors are important. First, Nichols was acting under instructions as a paid informant for the Government; second, Nichols was ostensibly no more than a fellow inmate of Henry; and third, Henry was in custody and under indictment at the time he was engaged in conversation by Nichols.

447 U.S. at 270, 100 S.Ct. at 2186.

Dodson argued at the post-conviction hearing and now on appeal that Myers was the equivalent of the inmate informant in *Henry.* Dodson also compares his situation with that in *Iddings v. State* (1981), Ind.App., 427 N.E.2d 10, in which the Court of Appeals held inadmissible a statement given by the defendant to a fellow inmate. That jailhouse informant had been recruited by police to collect information from his fellow inmates in exchange for leniency on pending charges.

▮ The post-conviction court found that *Henry* should not be retroactively applied but that, in any case, Myers was not an inmate informant within the meaning of *Henry* or *Iddings.* We need not address the retroactivity issue because we agree that Myers was not the instrumentality by which police improperly induced statements from Dodson without counsel.

The evidence showed that Myers, on his own intiative and independent of police inducement, collected Dodson's incriminating statements. The jailers testified that they inadvertently overheard Dodson and Myers talking but subsequently asked Myers only to reveal the substance of that conversation, not to elicit further statements. However, the jailers did request that Myers be alert for statements from another inmate suspected of using drugs and possessing a weapon. Soon afterward, the jailers again approached Myers, asking that he reveal the content of his original conversation with Dodson. It was at that point that the jailers discovered that Myers, subsequent

to their initial request, had obtained a confession from Dodson.

We find unpersuasive Dodson's claim that Myers was a jailhouse information broker whose "payment" was a favorable plea agreement from the State. Dodson notes that Myers' original charge was reduced in the plea agreement. At Myers' sentencing hearing, the prosecutor noted his help at the jail and in wrapping up an important case. Myers subsequently received the minimum sentence available under the plea agreement: ten years in prison. However, Myers already had entered into the plea agreement before he obtained the statement from Dodson. Furthermore, Myers, his attorney and the prosecutor testified that Myers was not offered any favors for his testimony at trial.

In any case, Myers was not an ordinary inmate like the informants in *Henry* and *Iddings*. His position as trustee was known to Dodson. Dodson had previously been incarcerated and testified that he knew that trustees had close contact with the jailers and sometimes acted as information gatherers for the authorities. The circumstances do not suggest that Dodson was an unsuspecting victim of a clever police agent clothed in inmate garb.

The evidence provides a substantial basis for the post-conviction court's determination that the State obtained Dodson's confession without violating his Sixth Amendment rights. Accordingly, we affirm its decision.

## II. Absence from Trial

Dodson suffered a brief epileptic seizure during the trial testimony of his former girlfriend. He was taken to the court library where he revived. Defense counsel testified at the post-conviction hearing that he conferred with Dodson in the library and mentioned the availability of a continuance. According to defense counsel, Dodson said that he did not want to be in the courtroom while his former girlfriend or her father testified because the experience would be disturbing.

They returned to the courtroom where the trial judge questioned Dodson extensively on a variety of subjects to determine whether the seizure had affected his mental alertness. Dodson answered each question appropriately and unequivocally. The trial court advised Dodson that he would be waiving his right to confront witnesses if he left the courtroom during questioning. Dodson said he understood.

 Both the Sixth Amendment and the Indiana Constitution guarantee an accused the right to be present during his trial and to confront witnesses against him. U.S. Const. amend. VI; Ind. Const. art. I, § 13. However, a defendant may waive that right if his decision is knowing and voluntary. *Martin v. State* (1984), Ind., 457 N.E.2d 1085. Dodson claims that his waiver was unknowing and involuntary because he felt an overwhelming fatigue after the seizure. He contends that he "would have done anything" for an immediate opportunity to rest and denies discussing a continuance with his attorney.

The evidence showed that Dodson did not inform the court or his attorney of any intense fatigue nor did he display any of its symptoms. He also did not seek a continuance during his lengthy discourse with the trial court. He reappeared in court the same afternoon immediately after the testimony of his former girlfriend and her father. Under these circumstances, the post-conviction court's finding of a proper waiver of Dodson's right to confront witnesses was proper.

## III. Seizure

Dodson also claims that he was denied a fair and impartial trial because the jury witnessed his epileptic seizure. He also alleges his attorney provided ineffective assistance by failing to seek a mistrial on those grounds. Immediately before Dodson's former girlfriend took the stand, the trial court warned the jury that Dodson was an epileptic subject to seizures. The trial court told the jury foreman to lead the jurors from the courtroom if Dodson began suffering a seizure. When Dodson's sei-

zure began, the jury immediately left the room.

We are inclined to agree with the trial court that the incident was not so prejudicial as to render Dodson's trial unfair. The jury's exposure to the incident was brief, and the trial judge's warning was straightforward and appropriate. Inasmuch as a mistrial was not merited under the circumstances, defense counsel was not ineffective for his failure to seek one.

### IV. Competence

Dodson claims that his trial attorney was ineffective for failing to secure a determination of his client's mental competence. Trial and conviction of a defendant who is mentally incompetent violates due process. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Our standard of review for ineffectiveness of counsel claims derives from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Price v. State* (1985), Ind., 482 N.E.2d 719. First, appellant must overcome a presumption of competence to show that his attorney's performance was defective, and, second, he must demonstrate that the defense was prejudiced by the deficient performance.

Dodson had been admitted to a hospital immediately after his arrest. Trial counsel indicated that he presumed the hospitalization was for dehydration. Dodson indeed was suffering from dehydration when he was admitted to the hospital, but he was admitted on an emergency basis for psychiatric evaluation. The physicians made a preliminary determination that Dodson was not psychotic, and he was returned to jail.

Defense counsel received Dodson's hospital file but testified at the post-conviction hearing that he was not aware of Dodson's purported mental problems. Defense counsel had inquired into Dodson's general health, but Dodson never mentioned any mental problems nor his suicide attempt in the jail. Defense counsel did discuss Dodson's case with a friend who was a psychiatrist; she indicated that Dodson did not appear to be suffering from any obvious mental defects. Trial counsel never arranged for a mental examination of Dodson.

Trial counsel did not pursue a psychiatric examination because he did not believe that Dodson could be incompetent. A review of the information available to trial counsel supports his decision but did not compel it. While the hospital records showed that Dodson had exhibited behavior which prompted police to question his mental health, physicians at the time determined that Dodson was neither psychotic nor dangerous. Trial counsel found Dodson lucid and thought he fully comprehended the proceedings against him. A defendant is considered competent if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... and ... has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960).

The decision against obtaining an independent evaluation of Dodson's competence fell squarely within the considered judgment of trial counsel. Perhaps some attorneys would have reached a different conclusion, but that fact, standing alone, does not render counsel ineffective.

### V. Sufficiency of the Evidence

Dodson claims generally that the evidence was insufficient to sustain his murder conviction. When a sufficiency claim is raised on appeal from a denial of post-conviction relief, this Court must determine whether there is evidence of probative value from which a jury could have reasonably determined beyond a reasonable doubt that the defendant committed the charged crime. *Evans v. State* (1973), 261 Ind. 148, 300 N.E.2d 882.

In this case, the bullets recovered from the victim's body appeared to have come from a rifle which Dodson buried in the presence of his former girlfriend. Dodson had told the woman that he bought the gun from a local gun shop. The owner of

that shop produced a recent bill of sale for the same model of gun with the signature of Ralph Dodson. A handwriting expert testified that the signature matched that of appellant. Dodson was attempting to flee to Canada when he was apprehended, and his former girlfriend testified that he acted suspiciously when asked about the murder. Finally, Dodson admitted his role in the murder to a fellow inmate. This evidence was sufficient to support the jury's verdict.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.