**Keith A. MILLER,
Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 45A03–8807–CR–230.

Court of Appeals of Indiana,
Third District.

March 16, 1989.
Rehearing Denied May 31, 1989.

Frank E. Spencer, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for plaintiff and appellee.

GARRARD, Presiding Judge.

Keith Miller was tried by jury and was convicted of 28 counts of theft. His appeal challenges the sufficiency of the evidence to establish necessary criminal intent.

In essence the evidence established that Miller procured money from twenty-eight different people or business entities, each of which represented one count in the information.

His argument is two-pronged. He first contends that under the language of the information there was no evidence that he took the money "without consent." Secondly, he argues that the evidence established no more than his failure to pay a debt. We disagree.

The evidence favorable to the verdict was substantially identical as to each victim. In May 1984 Miller solicited money (personal property in one instance) and a contract on behalf of Advertising Guides of America, Inc. whereby the purchaser's ad would be displayed on an electronic advertising board to be located in a local grocery store. Customers would be able to push a button to receive an additional message from the advertiser and an additional button to talk to the advertiser by telephone from the sign location.

While the contract did not specify a date when the signs were to be in place, there was evidence, including letters from Miller, indicating the displays would be up within three to four months. When the information was filed on May 16, 1985 no signs had been placed, nor had any been placed by the date of trial in October 1987.

Each of the customers gave Miller or his agent somewhere between $100 and $2353.45 when they agreed to the advertis-

ing. Each later demanded the return of the money without success.

When the advertising did not appear after several months the victims became upset and began calling the agent at his home. The agent could not reach Miller, who was living out of various motels in the area. The agent became suspicious and went to Indianapolis to the home office of the corporation. There he found an office with a work area in the back. He did not recall any sign outside the building. In the work area there were some work tables, tools and pieces of plywood. He saw none of the signs being constructed nor any work in progress.

Also it appeared that the monies paid by the victims were deposited in accounts at three local banks. Each of these accounts were maintained in the name of Advertising Guides Partners, Ltd. and Miller was the only person authorized to withdraw funds from the accounts.

Miller points out that the charging information stated that he did "... exert unauthorized control over property, towit: [money] by obtaining, taking, carrying or possessing the said property with intent ... to deprive ... and the said control ... was ... without the consent of the said [specific victim]...."

From this he argues that since the victims willingly gave Miller the money, he could not be found guilty of taking it without their consent.

■ In other words, he contends that there was a fatal variance between the charge and the proof. We do not agree.

The offense of theft is defined by IC 35–43–4–2(a). Its elements are (1) knowingly or intentionally, (2) exerting unauthorized control, (3) over property of another, (4) with intent to deprive the other person of any part of the value or use of the property.

IC 35–43–4–1 provides legislative definitions of what it means to exert control and when the exertion of control is unauthorized. In pertinent part it states:

(b) Under this chapter, a person's control over property of another person is 'unauthorized' if it is exerted:

(1) Without the other person's consent;

(2) In a manner or to an extent other than that to which the other person has consented;

(3) By transferring or encumbering other property while failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of that other property;

(4) By creating or confirming a false impression in the other person;

(5) By failing to correct a false impression that the person knows is influencing the other person, if the person stands in a relationship of special trust to the other person;

(6) By promising performance that the person knows will not be performed;

(7) By expressing an intention to damage the property or impair the rights of any other person; or

(8) By transferring or reproducing recorded sounds, without consent of the owner of the master recording, with intent to distribute the reproductions for a profit.

Clearly the essential element of the offense is simply that the control exercised by the accused be unauthorized. Arguably, any specification in the charge of a particular subparagraph under IC 35–43–4–1(b) is merely surplusage. If so, any variance between the proof and that assertion should be disregarded. *Madison v. State* (1955), 234 Ind. 517, 130 N.E.2d 35.

■ An examination of the enumerated forms of unauthorized control adds substance to the argument since they clearly do not purport to be mutually exclusive definitions. For example, promising performance under (6) certainly creates a false impression under (4) that vitiates any consent under (1) and represents an exertion of control in an unintended manner under (2).

Furthermore in the present case (and the usual situation) the difference between the proof and the pleaded "specific" allegation

of unauthorized control would not meet the requirements for a fatal variance. In order to be fatal to the result, the variance must either mislead the accused in the preparation of his defense or violate the prohibition against double jeopardy by subjecting him to the likelihood of another prosecution. *Grassmyer v. State* (1981), Ind., 429 N.E. 2d 248; *Lewellen v. State* (1976), 265 Ind. 483, 358 N.E.2d 115.

Miller's defense was not prejudiced. He knew that he was charged with exerting unauthorized control over the property of another with intent to deprive that person of the value of the property and he was advised of the particulars of who, what, when and where this was alleged to have occurred. For the same reasons, he clearly could not be subjected to another prosecution for the same offense based upon a different "specific" allegation of unauthorized control. *See, e.g., Bryant v. State* (1969), 252 Ind. 17, 245 N.E.2d 156; *Fleming v. State* (1910), 174 Ind. 264, 91 N.E. 1085.

We therefore hold there was no fatal variance.

■ Secondly, Miller argues that in any event the proof established no more than his failure to perform a business transaction which made him subject to civil liability.

One of the instances of unauthorized control described in the theft statute occurs when an accused secures control of property by promising performance that the person knows will not be performed. IC 35-43-4-1(b)(6).

Thus, the key exists in the intent of the person when he secures control of the property. Miller was properly convicted if, at the time he procured the money from the victims, he knew the promises would not be performed.

Intent may, of course, be proved by circumstantial evidence. *Miller v. State* (1986), Ind., 502 N.E.2d 92; *Anglin v. State* (1986), Ind., 490 N.E.2d 721. On appeal we may not reweigh the evidence. The facts and circumstances recited earlier clearly support the reasonable inference that Miller possessed the necessary intent. Of special significance in conjunction with the other circumstances was his activity in placing the funds in three separate bank accounts not in the name of the corporation, but in the name of a partnership with a closely similar name and over which, in each instance, he was the party authorized to withdraw the funds.

We find no error. The convictions are affirmed.

HOFFMAN and ROBERTSON, JJ., concur.