**Keith MILLER, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–8910–CR–00502.[1]**

Court of Appeals of Indiana,
Fifth District.

June 17, 1992.

Rehearing Denied July 28, 1992.

Transfer Denied Sept. 15, 1992.

---

**1.** This case was reassigned to this office by     order of the Chief Judge.

Monica Foster, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

SHARPNACK, Judge.

A jury found Keith Miller guilty of six counts of dealing in unregistered securities, six counts of sale of securities by an unregistered agent, and six counts of securities fraud, all class C felonies. The trial court sentenced Miller to eight years imprisonment on each count. The court further ordered that the sentences for sales by an unregistered agent and securities fraud be served concurrently with the sentences for dealing in unregistered securities, but the court ordered that the sentences for each count of dealing in unregistered securities be served consecutively. Miller was thus sentenced to six consecutive eight year terms, for a total executed sentence of forty-eight years. Miller appeals his convictions, and we affirm.

Miller raises four issues for our review. We restate these issues as follows:

1. Did the trial court err in trying Miller *in absentia* when he failed to appear for trial?

2. Did Miller's trial counsel render ineffective assistance when he failed to raise an accountant-client privilege objection to the testimony of witness Wertz?

3. Did the trial court abuse its discretion when it allowed a prosecution witness to testify concerning uncharged acts of misconduct committed by Miller?

4. Was Marion County the proper venue for Miller's prosecution for violations of the securities laws?

The following are the facts most favorable to Miller's conviction. In 1983 Miller and Bernie Custer operated a business called Hospitality Guides Systems, Inc. (hereinafter "HGS") from an office in Indianapolis. They directed their accountant, Greg Wertz, to incorporate a new company to be known as Advertising Guides of America, Inc., (hereinafter "AGA") and they hired an electrician to produce a prototype electronic advertising board upon

which the new corporation's business would be based. In early January of 1984, Miller and Custer contacted Gerald Shouse and told him that they had a functioning prototype of the advertising board. They also told him that they had already sold the idea to some investors in Lake County. Shouse agreed to help them find additional investors in his area in exchange for a share in the business.

Miller and Custer held a dinner meeting for Shouse and the potential investors at the Executive Inn in Vincennes on January 14, 1984. Prior to this meeting, Miller had not registered any stock in the advertising board business with the Indiana Securities Division, nor had he registered with the division as an agent for sale of any stock. The division twice had ordered Miller, who had a prior felony conviction and a prior conviction for conversion arising out of the sale of securities, to stop selling unregistered securities. At this meeting Miller and Custer showed the potential investors an operating prototype of the sales board, photographs of the corporate office, their resumes, and a prospectus. Miller told the investors that he intended to form a limited partnership, Advertising Guide Partners, Ltd. (hereinafter "AGP"), to market the board. He further told them that the business would be financed by only a limited number of investors, and that each investor had to purchase a minimum of two shares at a price of $2,375.00 per share. The money generated was to be used to produce the boards. The investors would serve as limited partners, while he and Custer would be general partners and would run the business. Miller told the potential investors that they could expect a 75% return on their investment in the first year.

Several of the potential investors decided to purchase shares in the partnership. Over the course of the next several days, these investors paid to Custer and Miller sums of money ranging from $1,000.00 to $9,500.00. Miller and Custer cashed the investors' checks.

Miller and Custer hired a salesman to sell advertising space on the boards in the Lake County area. The salesman made sales of over $30,000.00, but none of the boards were ever installed. None of the investors in AGP ever received a return on their investment, and none of them ever heard from Miller or Custer after giving them the money.

Miller first asserts that the trial court committed reversible error when it proceeded with the trial in his absence. He argues that both the federal and state constitutions guarantee him the right to be present for his own trial. U.S. Const. Amends. VI, XIV; Indiana Const. Art. I, § 13. Citing *Taylor v. United States* (1973), 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174, he concedes that the right may be waived. However, he argues that the right is fundamental and, accordingly, that the trial court should not find that the defendant has waived the right unless the state has shown that the defendant has knowingly and intentionally relinquished it. *Dodson v. State* (1987), Ind., 502 N.E.2d 1333, 1337. Miller contends that there is no evidence that he knowingly and intentionally absented himself from trial.

The trial court has heard evidence and argument concerning Miller's knowledge of the date of trial on four separate occasions: on the day of trial before it decided to proceed with trial, at hearing about sentencing which took place after the trial, at the sentencing hearing and at a subsequent evidentiary hearing conducted pursuant to the order of this court. We will now summarize the evidence presented at each of these proceedings.

Miller's trial was set for 9:00 a.m. on November 14, 1988. When Miller failed to appear in court by 10:47 a.m., the trial court commenced a hearing to determine whether he had knowingly absented himself from trial. The court noted that the trial date had been set on August 12, 1988, and that the court had held a hearing on a motion for continuance on November second. The court, without swearing in Miller's trial counsel Michael Riley, proceeded to question him concerning Miller's absence. Riley objected to the court's ques-

tions, but answered them when the court overruled his continuing objection.

Riley stated that he had last spoken with Miller at approximately 8:00 a.m. Indianapolis time on November 12, 1988, the Saturday before trial. When the court asked if he had discussed the trial date with Miller in this conversation, Riley replied that he had told Miller, "I'll see you Monday." The court then asked Riley when he first notified Miller of the November 14 trial date. Riley responded, "The date, whenever it was that I became aware that it was set for November the 14th, 1988; I would have sent him a notice at the address that I have for him. Plus I told him by phone." Riley estimated that he sent Miller notice of the trial date on August 14 or 15. Riley also stated that he had informed Miller that the motions for continuance which were heard on November 2 had been denied. In response to the court's last question, Riley stated that he had no doubt that Miller knew of the trial date.

One of the deputy prosecutors then proceeded to question Riley. She asked when Riley had been in contact with Miller, and Riley said that he had talked with Miller on each business day of the week before trial. Finally, Riley stated that, in a conversation which took place the Thursday before trial, he had a conversation with Miller in which it was implicit that the trial was set for the fourteenth.

As the hearing continued, one of the deputy prosecutors, Scott Newman, made certain representations to the court. Newman stated that he had talked with Miller at a deposition some time earlier and indicated that the case would come to a conclusion on the fourteenth. Newman stated that Miller agreed with his comment. Riley offered no objection to Newman making these representations.

On December 8, 1988, the trial court attempted to hold a sentencing hearing. At this time, Miller was still absent from the state. He was represented at the hearing by Gil Berry. The court did not proceed with sentencing, but did interrogate Kurtis Miller, the defendant's son, under oath. In response to the court's questions, Kurtis offered the following testimony:

Q. Well, last month had 30 days. How about last month in relation to the 14th of November? Did you see him before or after that date?

A. What day was the 14th?

Q. Monday.

A. It was before that.

Q. How do you know?

A. It was on a weekend. He was supposed to go to Court on Monday.

\* \* \* \* \* \*

Q. And it was at that time he told you he was coming to Indianapolis for his trial—

A. Yes, he did.

Q. —on Monday, the 14th?

A. Yes, he did.

(Supp. Record, pp. 130, 131).

On January 19, 1991, Miller filed a pro se petition in which he requested that he be afforded an opportunity to explain his absence from trial in order to rebut the inference that he had voluntarily absented himself from the trial and thus knowingly and intelligently waived his right to be present. (Petition For Remand, p. 5). This court initially denied Miller's petition, but we subsequently reconsidered our ruling in light of the fourth district's holding in *Ellis v. State* (1987), Ind.App., 525 N.E.2d 610, 612–613, in which Judge Conover wrote:

"The trial court may presume a defendant voluntarily, knowingly, and intelligently waived his right to be present and try the defendant *in absentia* upon a showing that the defendant knew the scheduled date but failed to appear. [citation omitted]. A defendant who has been so tried, however, *must* be afforded an opportunity to explain his absence and thereby rebut the initial presumption of waiver."

(emphasis added). We therefore issued an order remanding the case to the trial court granting Miller's petition and ordering the trial court to conduct a hearing so that Miller could explain his absence. (Order of May 31, 1991).

The trial court held the hearing on July 24, 1991. The state placed into evidence over Miller's hearsay objections the transcripts of the hearing held immediately before trial on November 14, 1988 and the attempted sentencing hearing held on December 8, 1988. The state also placed Newman on the stand. Under oath, Newman repeated that Miller had implied that he knew the trial date. Miller objected to this testimony. Newman also testified as to the statements which Riley had made in response to the court's questioning at the November 14 hearing.· Miller lodged a hearsay objection to this testimony. Newman further testified, again over a hearsay objection, that "somebody" had talked to Miller's wife and had been told that Miller had left for his trial on the morning of the fourteenth. Newman testified that Miller had denied his identity when he eventually was arrested in San Diego, California several months after the trial. Miller did not offer a contemporaneous objection to this testimony. Finally, Newman testified, over Miller's hearsay objection, that Allen Bucksot had told him that Miller had knowingly fled arrest when he was first charged with these offenses.

Miller offered the testimony of his wife, but, despite the fact that this court remanded the case to the trial court so that he could attempt to explain his absence, Miller did not testify. He therefore offered no personal explanation to counter the information which the state put before the court at the three hearings.

Keeping in mind that the July 24, 1991, hearing was intended to provide Miller with an opportunity to explain his absence, we now consider whether the information before the trial court when it decided to proceed *in absentia* was sufficient to raise the presumption that Miller had voluntarily absented himself from the proceedings. Riley, Miller's own counsel, stated that he told Miller of the trial date, and he further

informed the court of conversations in which it was clear that Miller knew of the date. In his original appellant's brief, Miller did not challenge the trial court's right to base its findings on these statements. Instead, he argued that the statements were insufficient to support the finding that he knowingly absented himself from the trial. We hold that these statements were sufficient to demonstrate that Miller knew of his trial date and were sufficient to raise the inference that Miller voluntarily absented himself from the proceedings, thus waiving his right to be present at trial.

■ When we remanded to the trial court for the July 24 hearing, we instructed the parties that they would be allowed to file supplemental briefs in order to address any issues which might arise out of the hearing. At the hearing and in his supplemental brief Miller attempted to raise an objection to the use of Riley's statements because Riley had not been sworn in at the time he made the statements. Miller argued that the unsworn statements of trial counsel are not evidence. *Gajdos v. State* (1984), Ind., 462 N.E.2d 1017, 1021; *Phillips v. State* (1989), Ind.App., 543 N.E.2d 646, 649.

We reject Miller's attempted challenge to the trial court's use of Riley's statement. Riley did not object to the court questioning him without putting him under oath. He did eventually ask if the court wanted to swear him in, but he did not do so until the court had concluded its questioning and the state had begun to ask him questions. Because Riley, in his capacity as Miller's attorney, did not object to being questioned without being sworn in, any objection to the trial court's reliance on the information it obtained from him has been waived. *Sweet v. State* (1986), Ind., 498 N.E.2d 924, 926.[2] Furthermore, Miller had ample opportunity to challenge the admissibility of Riley's unsworn statement in his appel-

---

2. In addition, we are not prepared to state that the trial court could not have relied on Riley's responses to its questions even if a proper objection had been raised. We note that Ind.Rules of Professional Conduct 3.3(a)(1) provides that an attorney shall not knowingly "make a false statement of material fact or law to a tribunal...." This requirement provides an additional reason for allowing the trial court to base its conclusion that Miller was aware of the trial setting upon Riley's answers without Riley first having sworn under oath to truthfully testify.

lant's brief. He chose not to do so, and we will not hear his attempt to raise the alleged error in a supplemental brief. *Marion Trust Co. v. Blish* (1908), 170 Ind. 686, 699–700, 84 N.E. 814, 819, *rehearing denied*, 170 Ind. 686, 85 N.E. 344; *Nickerson v. Hoover* (1917), 70 Ind.App. 343, 362, 115 N.E. 588, 593–594.[3]

To conclude on this point, Miller has correctly observed that *Ellis, supra,* requires that he be given an opportunity to explain his absence from trial and that the court consider that explanation in determining whether Miller waived the right to be present by voluntarily absenting himself, knowing that the trial was set. Miller chose silence at the sentencing hearing and offered nothing to the trial court at that time to suggest that his absence was anything other than knowing and voluntary. He petitioned this court for a remand to the trial court for a hearing "affording appellant an opportunity to explain his absence." (Petition for Remand). Remand was ordered for such a hearing and it was held. Again, Miller chose silence and offered not one word of explanation of his absence. The trial court's proceeding with the trial on the conclusion that Miller had knowingly and voluntarily absented himself was soundly based and Miller has offered nothing to suggest the trial court's conclusion was incorrect.

Miller next argues that his trial counsel rendered ineffective assistance in failing to object to the testimony of Greg Wertz, an accountant who was involved in the affairs of AGA and AGP. Miller asserts that the testimony was excludable because it divulged communications between an accountant and client which are privileged under I.C. § 25–2–1–23.

■ When we review a claim of ineffective assistance of counsel, we measure counsel's performance against a "reasonably effective assistance" standard. *Burr v. State* (1986), Ind., 492 N.E.2d 306, 307–308. The defendant has the burden to

show strong and convincing evidence to overturn the presumption of competence. 492 N.E.2d at 308 (*citing Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674). Our scrutiny is deferential and should not be distorted by hindsight; "[i]solated poor strategy, experience, or bad tactics" do not imply ineffectiveness. *Id.* We engage in a two-step analysis. First, we must determine whether the acts or omissions of counsel were outside the wide range of professionally competent assistance. *Sparks v. State* (1986), Ind., 499 N.E.2d 738, 739. If so, we must then determine whether such acts or omissions prejudiced the defendant. *Sulie v. State* (1988), Ind., 522 N.E.2d 380. Prejudice exists where there is "a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Smith v. State* (1987), Ind., 511 N.E.2d 1042, 1043 (*quoting Strickland* 466 U.S. at 695, 104 S.Ct. at 2068, 80 L.Ed.2d at 698).

■ Wertz was an incorporator and officer of AGP. As such, he had access to information concerning the company which was not privileged, and thus admissible. Miller's counsel certainly cannot be held to have been ineffective for failing to object to admissible testimony. *See, Kimble v. State* (1983), Ind., 451 N.E.2d 302, 306. Miller has failed to identify for this court which, if any, specific portions of Wertz's testimony involved information which was obtained in his capacity as an accountant. Because he has failed to identify specific instances in which his counsel failed to object to privileged information, Miller has waived the right to challenge any specific instances in which his counsel may have been ineffective for failing to object to privileged testimony. *See, Brune v. State* (1976), 168 Ind.App. 202, 208–209, 342 N.E.2d 637, 641; Ind. Appellate Rule 8.3(A)(7).

■ Miller next challenges the trial court's admission into evidence of the testi-

---

**3.** The remainder of Miller's supplemental brief deals with his challenges to the admissibility of testimony and evidence offered by the state at the July 24 hearing. Because we find that Ri-

ley's statement was sufficient to support the trial court's decision to hold the trial *in absentia,* we need not address the remainder of the issues raised in the supplemental brief.

mony of state's witness Dmitri Adich concerning AGP's efforts to market the boards. Adich testified that Miller hired him to sell space on the AGP boards in the Lake County area. Adich further testified that he sold space on the boards to many advertisers and that he turned the proceeds from these sales over to Miller, but that AGP never provided boards for any of the advertisers. Because he was not charged in the present cause with any crime stemming from these sales,[4] Miller argues that the court erred in admitting the testimony. The state responds that the testimony was properly admitted because the crimes were part of a common scheme or plan.

Evidence of uncharged criminal activity is admissible to complete the story of a criminal transaction. *McCormick v. State* (1982), Ind., 437 N.E.2d 993, 996–997. This is to say that such evidence may be admitted "to demonstrate [a] common scheme or plan [which] precipitat[ed] the offense now being tried." *Clarkson v. State* (1985), Ind., 486 N.E.2d 501, 506.

Here, the state's case postulated that Miller formed AGP as part of a scheme to defraud investors. Part of this scheme involved the intent to deprive the investors of funds which they should have earned on their investments. In order to prove this part of the scheme, the state offered Adich's testimony to prove that AGP had funds coming in which were diverted from the investors. This evidence is similar in character to that which the supreme court approved in *Clarkson,* and we find that the trial court committed no error in allowing Adich's testimony.

■ Finally, Miller argues that Marion County was an improper venue for his trial on these charges. He alleges that counts II through XVIII of the information all involve acts which were committed outside of Marion County and that consequently the Marion Superior Court was an improper venue to try those counts.

Here, Miller was charged with dealing in unregistered securities, dealing in securi-

ties without being registered to do so, and securities fraud. In *Kahn v. State* (1986), Ind.App., 493 N.E.2d 790, 794, the fourth district held that Marion County was proper venue for the offenses of dealing in unregistered securities and dealing in securities without being registered to sell securities because the failure to register is a criminal act which takes place in Marion County. Thus, in this case Marion County was the proper venue for all the counts for failure to register. In addition, AGA and AGP maintained offices in Indianapolis. Since AGP was the vehicle by means of which Miller defrauded the investors, and since the funds obtained from them were deposited in Indianapolis bank accounts, Marion County was proper venue for the trial of the securities fraud counts. *See Kahn,* 493 N.E.2d at 794.

Judge Sullivan has parted company with us on the matter of affirming the convictions on all eighteen counts. We respectfully cannot agree with his conclusion that the convictions on Counts VII through XVIII cannot stand. We have examined the charging information, the verdicts, and the statutes governing the offenses and have determined that the convictions do not constitute double jeopardy.

■ A criminal defendant may be convicted of multiple offenses stemming from the same act if the offenses are not identical. *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. Offenses are not identical if each offense as charged contains at least one element not common to the other offenses charged. *Elmore,* 269 Ind. at 534, 382 N.E.2d at 895 (*quoting Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309).

Counts I through VI of the information charged Miller with sale of unregistered securities. The statute governing this offense, I.C. § 23–2–1–3, states that it is unlawful to sell any security unless: (1) it is registered; (2) or the security is exempted from registration. The charging informa-

**4.** In a separate cause of action, Miller was tried and convicted in Lake County Court of twenty-eight counts of theft stemming from these trans-

actions. The third district affirmed his conviction of these counts in *Miller v. State* (1989), Ind.App., 535 N.E.2d 170.

tion alleged that Miller knowingly offered and sold a security which was not registered and which was not exempt from registration. Counts VII through XII of the information alleged that Miller sold a security while he was not registered as a broker, dealer, or agent for the sale of securities. The governing statute, I.C. § 23–2–1–8, provides that it is unlawful for a person to transact business in Indiana as a broker-dealer, agent, or investment advisor unless he is registered. The charging information alleged that Miller knowingly transacted business—the sale of the AGP securities in Indiana—while he was not registered as a broker-dealer. Thus, the state was required to prove a fact in order to prove counts VII through XII that it did not have to prove in order to meet its burden on counts I through VI. The state also had to prove a fact in order to prove counts I through VI that it did not have to prove in order to meet its burden on counts VII through XII. Under *Elmore*, the jury was entitled to convict on all of these counts.

■ Counts XIII through XVIII of the information alleged that Miller committed securities fraud. The governing statute, I.C. § 23–2–1–12, provides that it is unlawful for any person in connection with the sale or purchase of any security to make any untrue statements of a material fact or to omit to state a material fact necessary in order to make the statements made in a light of the circumstances under which they are made, not misleading. In *Kahn v. State* (1986), Ind.App., 493 N.E.2d 790 the fourth district held that the failure to inform potential investors of previous securities violations was sufficient to support a conviction for securities fraud. The charging information alleged that Miller knowingly sold securities without divulging that he had in the past been convicted of securities offenses and that he was presently under a cease and desist order from the state of Indiana. This element is not common to the other charged offenses. Therefore, each of the offenses contains an element of proof not common to the others and the convictions do not constitute double jeopardy.

The trial court committed no error, and we affirm on all counts.

AFFIRMED.

BARTEAU, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

With respect to the issue concerning trying Miller *in absentia*, I concur in result. The trial court could consider the unsworn statements of defense counsel and the deputy prosecutor only in light of the duty of candor owed by attorneys to the court. As noted by the majority in footnote 2, Ind. Rules of Professional Conduct 3.3 permits a court to credit and rely upon an unsworn representation made by counsel as to a matter within counsel's personal knowledge unless and until the contrary is shown. This reliance is especially warranted, where, as here, the court must make an immediate ruling as to whether to proceed with the trial.

The representation made by defense counsel was never contested, even when Miller had an opportunity to do so. He therefore failed to demonstrate any reasonable explanation for his absence at trial. Accordingly, he has shown no entitlement to reversal upon this basis.

I fully concur in the majority's resolution of the issue of failure to object to the accountant's testimony upon grounds of privilege.

As to the admission of witness Adich's testimony, I concur in the conclusion that his testimony tended to show the overall scheme to defraud the investors. I must, however, disagree that evidence of unrelated criminal activity is always admissible upon a general vague suggestion that it "completes the story". Notwithstanding *McCormick v. State* (1982) Ind., 437 N.E.2d 993 at 996, such evidence should not be admitted unless it otherwise qualifies to demonstrate the common scheme or plan. This is particularly so when the prejudicial effect of the evidence tends to heavily out-

weigh its relevance to prove the crime charged.

I concur that Marion County was an appropriate venue for the trial even though the actual security sales took place elsewhere. An essential element as to each cognizable charge was failure to register the securities and/or himself as a dealer with the Indiana Securities Commission located in Marion County.

I must respectfully dissent however from affirmance of the convictions upon all of the eighteen counts filed. The six counts which charge failure of Miller to register as a broker-dealer specifically reiterate the identical six acts which constitute the charges in the first six counts. Similarly, the six counts involving allegations of securities fraud depend upon the same six sales alleged in Counts I–VI.

The sales to six named purchasers, which constitute criminal acts under Counts I–VI, are also included as essential elements of the crimes charged in Counts VII–XII, and of the crimes charged in Counts XIII–XVIII. The sales themselves are included offenses in Counts VII–XVIII because of the way those offenses are charged. The convictions under Counts VII–XII and Counts XIII–XVIII cannot co-exist with the convictions upon Counts I–VI. *Watkins v. State* (1991) Ind., 575 N.E.2d 624; *Bowling v. State* (1990) Ind., 560 N.E.2d 658; *Wethington v. State* (1990) Ind., 560 N.E.2d 496; *Griffin v. State* (1991) 2d Dist., Ind. App., 583 N.E.2d 191.

Accordingly, I would affirm the convictions and the six consecutive eight-year sentences imposed upon Counts I through VI for an aggregate sentence of forty-eight years. I would reverse the convictions upon Counts VII through XVIII and, in doing so, note that the time to be served by the defendant is not affected thereby.