STATE of Indiana, Appellant–
Respondent,

v.

Keith MILLER, Appellee–Petitioner.

No. 49A05–0201–PC–40.

Court of Appeals of Indiana.

July 30, 2002.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Don A. Tabbert, Chad T. Walker, Tabbert Hahn Ernest & Weddle, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

The State of Indiana appeals the granting of a petition for post-conviction relief filed by Keith Miller, challenging the correctness of that ruling as the sole issue upon appeal.

We reverse.

The facts underlying the conviction were set out as follows by this court in Miller's direct appeal:

In 1983 Miller and Bernie Custer operated a business called Hospitality Guides Systems, Inc. (hereinafter "HGS") from an office in Indianapolis. They directed their accountant, Greg Wertz, to incorporate a new company to be known as Advertising Guides of America, Inc., (hereinafter "AGA") and they hired an electrician to produce a prototype electronic advertising board upon which the new corporation's business would be based. In early January of 1984, Miller and Custer contacted Gerald Shouse and told him that they had a functioning prototype of the advertising board. They also told him that they had already sold the idea to some investors in Lake County. Shouse agreed to help them find additional investors in his area in exchange for a share in the business.

Miller and Custer held a dinner meeting for Shouse and the potential investors at the Executive Inn in Vincennes on January 14, 1984. Prior to this meeting, Miller had not registered any stock in the advertising board business with the Indiana Securities Division, nor had he registered with the division as an agent for sale of any stock. The division twice had ordered Miller, who had a prior felony conviction and a prior conviction for conversion arising out of the sale of securities, to stop selling unregistered securities. At this meeting Miller and Custer showed the potential investors an operating prototype of the sales board, photographs of the corporate office, their resumes, and a prospectus. Miller told the investors that he intended to form a limited partnership, Advertising Guide Partners, Ltd. (hereinafter "AGP"), to market the board. He further told them that the business would be financed by only a limited number of investors, and that each investor had to purchase a minimum of two shares at a price of $2,375.00 per share. The money generated was to be used to produce the boards. The investors would serve as limited partners, while he and Custer would be general partners and would run the business. Miller told the potential investors that they could expect a 75% return on their investment in the first year.

Several of the potential investors decided to purchase shares in the partnership. Over the course of the next several days, these investors paid to Custer and Miller sums of money ranging from $1,000.00 to $9,500.00. Miller and Custer cashed the investors' checks.

Miller and Custer hired a salesman to sell advertising space on the boards in the Lake County area. The salesman made sales of over $30,000.00, but none of the boards were ever installed. None of the investors in AGP ever received a return on their investment, and none of them ever heard from Miller or Custer after giving them the money.

*Miller v. State*, 593 N.E.2d 1247, 1248–49 (Ind.Ct.App.1992), *trans. denied.*

As a result of the activities set out above, Miller was charged with eighteen counts of securities violations. When Miller failed to appear on the morning trial was to commence, the trial court conducted a hearing to determine whether Miller knew that his trial was to start that morning. At the hearing, Miller's counsel testified that he had "no doubt" that Miller knew of the trial date. *Id.* at 1250. At the conclusion of the hearing, the trial court determined that trial should proceed in Miller's absence. Miller was convicted on all eighteen counts.

After trial concluded, Miller retained new counsel, Kevin McShane, to represent him at the sentencing hearing. After re-

viewing the record, McShane became convinced that the court had contravened Indiana law by trying Miller in absentia. Accordingly, he instructed Miller to remain silent at the sentencing hearing, fearing that Miller might divulge something indicating that he had actual knowledge of the trial date. McShane informed the court prior to the commencement of the sentencing hearing that he, too, would stand mute, and would offer no argument or present any evidence or testimony at the hearing. The sentencing hearing proceeded without input from Miller or McShane, after which Miller received a forty-eight-year executed sentence.

Miller retained different counsel to represent him in his direct appeal. Appellate counsel presented four issues, including the decision to try Miller in absentia. We concluded that the trial court did not err in conducting trial in his absence, summarizing our holding on that point as follows:

> To conclude on this point, Miller has correctly observed that [*Ellis v. State,* 525 N.E.2d 610 (Ind.Ct.App.1987)], *supra,* requires that he be given an opportunity to explain his absence from trial and that the court consider that explanation in determining whether Miller waived the right to be present by voluntarily absenting himself, knowing that the trial was set. Miller chose silence at the sentencing hearing and offered nothing to the trial court at that time to suggest that his absence was anything other than knowing and voluntary. He petitioned this court for a remand to the trial court for a hearing "affording appellant an opportunity to explain his absence." (Petition for Remand). Remand was ordered for such a hearing and it was held. Again, Miller chose silence and offered not one word of explanation of his absence. The trial court's proceeding with the trial on the conclusion that Miller had knowingly and voluntarily absented himself was

soundly based and Miller has offered nothing to suggest the trial court's conclusion was incorrect.

*Miller v. State,* 593 N.E.2d at 1252. The Indiana Supreme Court denied Miller's petition to transfer on September 15, 1992.

Miller, acting pro se, filed his petition for post-conviction relief (PCR) on May 8, 1995. In the lengthy PCR petition, Miller asserted nine separate grounds for relief, two of which included allegations of ineffective assistance of trial, sentencing, and appellate counsel. Miller cited fifteen instances of ineffective assistance of trial counsel and nine instances of ineffective assistance of sentencing counsel, all of which are attributable to counsel's decision to stand mute at sentencing. (E.g., "Neglected to object when the sentencing court erred in not finding any mitigating circumstances.") *Appellant's Appendix* at 87. Finally, Miller alleged thirteen instances of ineffective assistance of appellate counsel, with one of those allegations containing sixteen sub-parts. One of the latter allegations centered upon appellate counsel's failure to appeal sentencing counsel's allegedly defective performance. The post-conviction court rejected Miller's claims that his sentence was manifestly unreasonable and that appellate counsel rendered ineffective assistance. The court concluded, however, that Miller was entitled to a new sentencing hearing because sentencing counsel rendered ineffective assistance, as reflected in the following findings and conclusions:

> 5. Keith Miller's counsel's performance at sentencing was deficient and contained sufficient egregious errors, that, when viewed in their entirety, constitute ineffective assistance of counsel. Evidence of egregious errors may provide grounds for reversal. Furthermore, when counsel's performance at the Sentencing Hearing is below the prevail-

ing professional norms, a court should find ineffective assistance of counsel.

6. Keith Miller was prejudiced at sentencing by the deficient performance of his attorney. "Prejudice exists when there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." [*Conrad v. State,* 747 N.E.2d 575, 586 (Ind.Ct.App.2001).] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Sic.] The deficient performance of Miller's attorney and the substantial factual errors contained in Miller's Pre–Sentence Report rendered the outcome of the sentencing proceedings fundamentally unfair.

*Appellant's Appendix* at 117 (some citations omitted). It may be inferred from the foregoing that the post-conviction court granted the PCR petition upon its finding that Miller was prejudiced by sentencing counsel's decision to stand mute, most notably with respect to the presentence report and alleged errors contained therein.[1] The State appeals that ruling.

▇ Our supreme court recently observed that the completion of the direct appeal process in Indiana largely closes the door to a criminal defendant's claims of error in conviction or sentencing. *See Allen v. State,* 749 N.E.2d 1158 (Ind.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1925, 152 L.Ed.2d 832 (2002). Nevertheless, our post-conviction procedures permit defendants to present a narrow set of claims. *See* Ind. Post–Conviction Rule 1(1). "The scope of the relief provided for in these procedures is limited to 'issues that were not known at the time of the original trial or that were not available on direct appeal.'" *Allen v. State,* 749 N.E.2d at 1164 (quoting *Ben–Yisrayl v. State,* 738 N.E.2d

253, 258 (Ind.2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002)). Issues that were available but not presented upon direct appeal are waived, and issues that were litigated adversely to the defendant are res judicata. *Allen v. State,* 749 N.E.2d 1158.

▇ When ruling upon a PCR petition, a court must render findings of fact and conclusions of law on all issues presented in the PCR petition. *See* P–C.R. 1(6). The facts must support the findings and the conclusions must be supported by the law. *See Bivins v. State,* 735 N.E.2d 1116 (Ind.2000). We limit our review to these findings and conclusions. When examining the findings and conclusions, we apply a deferential standard of review. *Allen v. State,* 749 N.E.2d 1158. "[We] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Allen v. State,* 749 N.E.2d at 1164 (quoting *Miller v. State,* 702 N.E.2d 1053, 1058 (Ind.1998), *cert. denied,* 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000)).

Miller prevailed on a claim of ineffective assistance of counsel. Our standard of review when evaluating claims of ineffective assistance of counsel is well settled. In order to prevail, a defendant must establish the two components set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must show that counsel's performance was deficient. *Id.* To establish this element, the petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious

---

1. It should be clarified here that, at the time, neither McShane nor Miller was aware that the presentence report contained errors.

that they resulted in a denial of the right to counsel guaranteed by the Sixth Amendment. *Id.* The second element of an ineffective-assistance-of-counsel claim compels the petitioner to demonstrate that the deficient performance prejudiced the defense. *Id.* A petitioner establishes prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The language employed by our appellate courts in describing a defendant's task in challenging matters of strategy or tactics reflects that the petitioner faces a daunting task. Counsel is afforded "considerable discretion" in choosing strategy and tactics. *Martin v. State,* 760 N.E.2d 597, 600 (Ind.2002). When evaluating such claims, we "strongly presume" that counsel's assistance was adequate and that all significant decisions were made in the exercise of reasonable professional judgment. *Id.* Moreover, this court has indicated that, for the most part, deliberate choices made by attorneys for tactical or strategic reasons do not establish ineffective assistance of counsel, even where such choices are subject to criticism or ultimately proved to be detrimental to the defendant. *See Driver v. State,* 725 N.E.2d 465 (Ind.Ct. App.2000). This approach is based upon our disinclination to second-guess the propriety of counsel's tactics. *See Davidson v. State,* 763 N.E.2d 441 (Ind.2002). "The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client." *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001), *petition for cert. filed* (Mar. 6, 2002). We must grant counsel latitude in "choosing a strategy which, at the time and under the circumstances, he

or she deems best." *Lambert v. State,* 743 N.E.2d 719, 751 (Ind.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1082, 151 L.Ed.2d 982 (2002). This is not to say that strategic and tactical decisions are beyond review. A strategic decision may be deemed ineffective assistance of counsel if it "is so deficient or unreasonable as to fall outside of the objective standard of reasonableness." *Potter v. State,* 684 N.E.2d 1127, 1133 (Ind.1997). This court has determined that reversal on this basis is reserved only for performance that may be characterized as "egregious". *Conrad v. State,* 747 N.E.2d 575, 586 (Ind.Ct.App. 2001), *trans. denied.* We conclude that the strategy employed by sentencing counsel here does not meet that criterion.

■ First, we observe that there could not be a clearer example of a challenge that is based upon a purely "strategic decision." After reviewing Miller's file (and it bears repeating that he did not represent Miller at trial), McShane formed the opinion that, based upon the evidence of record, there was a strong likelihood that Miller's conviction could be overturned on appeal. As McShane described it, the "very specific reason" that underlay his decision was that he had formed a "firm opinion" that the trial in absentia was improper. *Transcript of the Record* at 60–61. The pivotal question in that determination was whether Miller actually knew about the trial for which he failed to appear. In McShane's opinion, the evidence was not sufficient to prove that Miller had actual knowledge of the trial. After conferring with Miller before the hearing, however, McShane became aware that Miller did, in fact, know of the trial date, and therefore that an appeal on that basis would not succeed if Miller answered truthfully any questions on that subject that were posed at the sentencing hearing. Therefore, in order to preserve what he deemed to be a strong likelihood of overturning the convictions on appeal,

McShane instructed Miller to remain silent, and chose to do so himself as well. Moreover, if Miller's appeal had succeeded, there was a possibility that other statements made by Miller at the sentencing hearing could, as the State phrases it, "return to haunt" Miller at a subsequent trial. *Brief of Appellant* at 8.

McShane's strategy, although somewhat unorthodox, does not strike this court as one that was unreasonable based on prevailing professional norms. *See Lambert v. State*, 743 N.E.2d 719. The fact that the subsequent appeal ultimately was not successful does not transform that decision into an "egregious error" within the meaning of *Strickland* and its progeny. The rules that have developed since *Strickland* forbid such second-guessing. *See Driver v. State*, 725 N.E.2d 465.

We note here that this case is distinguishable from *Hiner v. State*, 557 N.E.2d 1090 (Ind.Ct.App.1990), in which we reversed a conviction on *Strickland* grounds after trial counsel remained mute during trial. In that case, counsel believed that the trial court had erred in ruling on a motion in limine and therefore chose to remain silent and offer no defense at the subsequent trial. It is difficult to imagine a scenario in which a decision to offer no defense at all during trial would not constitute ineffective assistance of counsel. Among other things, we note that there are ways to proceed during trial while still preserving perceived errors and without suffering irreparable harm should a new trial be ordered. Such may not have been the case here. We conclude that, on the facts of this case, the decision to stand mute was not an egregious one and therefore cannot support the determination that Miller received ineffective assistance of counsel.

■ Finally, we note that even assuming for the sake of argument that the decision to stand mute constituted deficient performance within the meaning of *Strickland*, Miller could not demonstrate that he suffered the requisite prejudice thereby. Miller received enhanced and consecutive sentences, based in part upon his criminal history. Even subtracting the errors apparently contained in the presentence report,[2] Miller's criminal history remains considerable. The remaining con-

---

2. Miller testified at the post-conviction hearing that he would have recognized the inaccuracies contained in the presentence report and would have been able to advise the court of the errors if given the chance. The errors in question pertained primarily to Miller's criminal history. At the post-conviction hearing, Miller identified the following statements in the presentence report as incorrect:

> [H]e has been involved in similar business dealings in Wisconsin, Las Vegas, Nevada, and San Diego, California.
> From 1961 to 1985, the defendant accumulated *thirteen (13) arrests,* including the instant offense.
> He has a *Firearms violation* that was plead to Carrying a Concealed Weapon in which he received one month suspended; *three arrests for alcohol offenses, all of which were dismissed; a traffic related offense; and a Battery case that was dimissed* [sic].
> The defendant plead guilty to four counts of Conversion, *all Class A misdemeanors and*

> received six months of weekends and $35,000 in restitution to be paid during probation. The restitution was paid on the day of the guilty plea.
> It is also important to note that in *1977,* the defendant was issued a *Cease and Desist* order by the Indiana Securities Division. This order was against Capital Funding, Inc., and *it occurred because the defendant failed to inform potential investors they were buying his own shares in the corporation rather than coporate* [sic] *stock. Also in 1978, the Indiana Securities Division issued another Cease and Desist order against Lion's Head, Inc.*
> *Exhibit Binder* at third and fourth pages (emphasis in original). (Included in the appellate materials is an Exhibit Binder, which contains a copy of the presentence report, an affidavit submitted by attorney McShane, and two documents purportedly reflecting what Miller's sentence would have been by application of the federal sentencing guidelines in

victions are for offenses similar to those of which he was found guilty in the instant case. They included submitting a false financial statement to a bank, defrauding seven investors of $35,000 in Adams County, and conviction on twenty-nine counts of theft in Lake County, Indiana. In view of Miller's lengthy history of similar criminal conduct, Miller has failed to demonstrate a reasonable probability that, but for counsel's errors, he would have received a different sentence if he had brought the errors in the presentence report to the court's attention. *See Lambert v. State,* 743 N.E.2d 719.

Judgment reversed.

BROOK, C.J., and SHARPNACK, J., concur.

---

effect now, and those in effect at the time of sentencing. The pages of the Exhibit Binder are not numbered sequentially. The presentence report in the Exhibit Binder is, of course, a copy of the original presentence report. Apparently in preparation for the post-conviction hearing, Miller underlined portions of the report that contained what he identified as factual errors. The material so underlined is indicated herein in italics.)